# BOYKIN v. CHASE BOTTLING WORKS (two cases).
## —222 S W. (2d) 889.

Western Section.   March 2, 1949.

Petition for Certiorari denied by Supreme Court, July 9, 1949.

510

R. R. Bond, of Memphis, for appellants.

Charles L. Neely and D. W. Wells, both of Memphis, for appellee.

ANDERSON, P. J.—Mrs. Boykin sustained a personal injury from the bursting of a bottle containing a carbonated beverage produced and sold by the defendant. She brought this action for damages, charging negligence on the part of the defendant in bottling the drink. Her husband brought a separate action for loss of services and companionship and for expenses incurred in treating his wife's injuries. The cases were tried together. The declarations are respectively in two counts. There were jury verdicts in both cases in favor of the defendant as to count one and directed verdicts as to count two. The judge approved the jury verdicts and judgments were entered, dismissing the suits. The plaintiffs appealed in error.

Since the suit of the husband depends upon that of the wife, and the same questions are made in both, for convenience of expression we take note only of the latter.

Mrs. Boykin and her husband operated a restaurant and grocery business in Shelby County. In connection therewith they sold beverages of different kinds, among them being one known as Double-Cola, which is manufactured, bottled and sold by the defendant, Chase Bottling Company.

On October 19, 1947, Mrs. Boykin removed a bottle of the beverage from the ice box maintained by the plaintiffs in their place of business, and was about to open it and hand it to a customer when the bottle burst while she had it in her hand. A piece of the glass entered her wrist, resulting in a substantial injury.

In the first count of the declaration, after stating the fact of the injury and its cause, it was averred as follows: "That the defendants manufactured the contents of the bottle, filling them at their plant in Memphis, Tennessee, and at all times had complete control of the bottles until then (sic) were delivered to plaintiff's place of business; that the bottles were carefully and properly handled by plaintiff and by all persons into whose hands they came after leaving the hands of the defendants; that the explosion was not caused by the negligence or improper handling of the bottle on the part of plaintiff after leaving the possession of the defendants; that the bottles contained a beverage charged with carbonic acid, which exerts an exploding pressure upon the bottles into which it is introduced and confined; that all the facts and circumstances of and concerning the manufacture and production of said bottles were exclusively within the knowledge of the defendants and not within the

knowledge of the plaintiff; that the bottles would not have burst if due care had been used by the defendants and that said bottles were too highly and dangerously charged with said gas so that they could not withstand the pressure thereof."

The second count reiterates the averments of the first, and charges in addition that, "The bottles were defective or of inferior material and unable to withstand internal pressure", and that "the defendants are here notified that the plaintiff will rely upon the rule of res ipsa loquitur".

At the conclusion of all the evidence, the judge overruled the defendant's motion for a directed verdict as to Count 1, but as said, sustained the motion as to Count 2. He held the doctrine of res ipsa loquitur was not applicable and in his instructions confined the jury to a consideration of the specification of negligence contained in the first count, to the effect that the bottle was overcharged. The defendant's evidence tended to show the exercise of a high degree of care in the bottling of its products, and there is no contention that the verdict of the jury as to the first count was not supported by substantial evidence.

The only other hypothesis advanced was that the defendant was negligent in marketing its beverage in a bottle so defective that when handled after it left the defendant's control in a manner reasonably to be expected, it was incapable of withstanding the normal pressure exerted by the gas in the beverage. Whether there was evidence to justify the submission of the case to the jury upon this theory, is the question presented by the assignment of error challenging the action of the court in sustaining the defendant's motion for a directed

verdict as to Count 2. A disposition of this question will in the main dispose of all the others insofar as they are necessary to be considered.

The circumstances under which the defendant's products were handled after reaching the plaintiff's place of business appeared from evidence offered by her. Deliveries were made usually on Wednesday of each week by a servant of the defendant. The bottles were in wooden cases, each case containing twenty-four. Upon arrival at the plaintiffs' store the defendant's servant ascertained how many cases were desired and then put the requested number in a store-room at the rear of the business house. Plaintiffs also handled other bottled drinks manufactured by different concerns, which were delivered in a like manner. Only the delivery boys, the plaintiff, J. R. Boykin, and his wife and daughter had access to the storeroom.

In that part of the store where the business was conducted the plaintiffs had an ice box with a sliding top. The box was divided into compartments, one for soft drinks and the other for beer.

Mrs. Boykin was usually occupied with her household duties until about 10 o'clock a. m. but thereafter worked in the store. The business was customarily opened each day about 7:00 o'clock in the morning by Mr. Boykin. He first cleaned and drained the ice box as required by the Health authorities, and then filled the bottom with bottled beverages, standing them upright. The lid was left off the box until the arrival of the ice man.

Ice in fifty-pound blocks was delivered twice daily, once in the morning and once in the afternoon except on Sunday when there was only a morning delivery. The ice man came "bright and early" in the winter and

between 9:00 and 11:00 o'clock a. m. in the summer. Upon the morning delivery the ice was put in the box by the ice man. He deposited the fifty-pound block on top of the bottles which had been placed in the bottom of the box by Boykin prior to his arrival. With the block thus resting on top of the bottles, the ice man, using an ice pick, broke it into pieces somewhat smaller than a man's fist "so as to get them around the drinks as neatly as possible." After this was done, Boykin placed a layer of bottles on top of the ice, "to keep from moving the ice to get to the bottom of the box." By the time the bottles which had been put on top of the ice were sold, the ice had melted sufficiently for the bottles on the bottom to be reached without the necessity of pushing the ice aside. But as the ice melted some of the standing bottles would fall over.

Customers over fourteen years of age, who usually knew the kinds of drinks they desired, were permitted to serve themselves from the ice box. In doing this it was sometimes necessary for them to "move the ice around".

As said, the accident in question occurred on the afternoon of Sunday, October 19, 1947. The particular bottle which burst was one of a lot which had been delivered on the preceding Wednesday. It, along with others, had been taken from a case in the storeroom and put in the bottom of the ice box by Mr. Boykin when he cleaned and filled the box early Sunday morning in the manner described above. The ice man had made a delivery on Sunday morning, depositing the ice on top of the bottles and breaking it up in the usual manner, following which a layer of bottles had been placed on top of the ice by Mr. Boykin.

Between 3:00 and 4:00 o'clock in the afternoon a ten-year old child asked for a bottle of Double-Cola. At that time the ice had "almost gone" from the box and due to previous sales the supply of beverages had been almost exhausted. Those left were standing on end in the bottom of the ice box where they had been put by Mr. Boykin when he first filled the box. From these Mrs. Boykin picked a bottle of Double-Cola and was returning to the counter holding it in her hand when the accident happened.

On the day before the accident, another bottle of Double-Cola had burst, injuring Mrs. Boykin slightly. The details of this incident were not shown. After the accident and about six months before the trial still another bottle burst just after it was taken from the ice box by Mr. Boykin.

Mr. Boykin also testified generally that, "I believe two or three (bottles) exploded after October 19th" referring to the date of the accident. He gave no details of these instances other than as above set forth. In fact, in connection with this statement he did not say that the bottles which subsequently burst contained the defendant's product; nor did he say that they had been acquired from the defendant.

It was stipulated that the mean temperature on the day of the accident was 70°. On the day before, it was 68°.

If the doctrine of res ipsa loquitur were otherwise applicable, as the plaintiff insists, the fact that the declaration charged in addition a specific act of negligence would not render it unavailable to the plaintiff. While there are authorities elsewhere to the contrary,

such is the settled rule in this jurisdiction. Bouchard & Sons v. Keaton, 9 Tenn. App. 467, 479.

The view that by the weight of the authority the doctrine of res ipsa loquitur has no application in a case involving an injury resulting from the bursting of an ordinary beverage bottle, is supported by the language of the annotator in 4 A. L. R. 1094; but it is said by respectable authority that subsequent annotations, 39 A. L. R. 1006, and 56 A. L. R. 593, and cases decided subsequent to the compilation thereof, indicate that the weight of authority now is to the contrary. Bradley v. Conway Springs Bottling Co., 154 Kan. 282, 118 P. (2d) 601; see also, Benkendorfer v. Garrett, Tex. Civ. App., 143 S. W. (2d) 1020; Escola v. Coca-Cola Bottling Co., 24 Cal. (2d) 453, 150 P. (2d) 436.

The editors of American Jurisprudence, a work based on decisions published in the selected case system of reports, including American Law Reports, seem of the same opinion as to the weight of authority expressed by the author of the annotation appearing in 4 A. L. R. 1094; but in the text immediately following the expression of this view, there is added this: "However, in the case of the explosion of a highly charged bottled beverage, particular circumstances may give rise to the application of the rule (of res ipsa loquitur) and the view has been taken that the plaintiff should have the benefit of the rule when the bottle is shown to have been transported in the usual course of business with reasonable and ordinary care." 22 Am. Jur. 214, 215, Section 97.

We think this equivalent to admitting that the doctrine is in fact applicable in principle if not en nomine. That this is true is apparent from the nature of the "particular circumstances" which it is said may give rise to the

application of the rule. These appear from a note to the text reading as follows: ''The explosion of a bottle, the contents of which were advertised and sold as Coca-Cola, a harmless and refreshing beverage, raised an inference of negligence against some one, and upon its being affirmatively shown that all the persons through whose hands the bottle had passed after leaving the manufacturer were free from fault and that the condition of the bottle and its contents had not been changed, the inference of negligence by a process of elimination, must be placed against the manufacturer.''

For this view the note cites Annotations 4 A. L. R. 1095; 8 A. L. R. 502 S, 39 A. L. R. 1006; 56 A. L. R. 593, L. R. A. 1916-E 1078.

Manifestly, there is nothing unique about these ''particular circumstances'' with which the author of the text hedges about his view. They serve only to show the essential element that the apparent cause of the accident was under the exclusive control of the defendant.

In the case of Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 413, 158 S. W. (2d) 721, 171 A. L. R. 1200, the Court indicates that the doctrine of res ipsa loquitur is applicable in the general class of cases to which the present one belongs, where it appears that the plaintiff purchased the beverage directly from the manufacturer or bottler. It is true that in expressing this view the Court was dealing with an injury resulting from a foreign substance contained in the beverage, but there can be no difference in principle between a case of that kind and one involving an injury resulting from the bursting of a bottle, where, after the beverage leaves the hands of the bottler, there is no intervening act operating as a causative factor. Nor does the higher degree

of care required of the bottler under the circumstances appearing in the Sullivan case furnish any sound basis for a distinction insofar as it concerned the application of the doctrine of res ipsa loquitur. Cf. Cincinnati, N. O. & T. P. R. Co. v. South Fork Coal Co., 6 Cir., 139 F. 528, 1 L. R. A. N. S., 533, opinion by Judge Lurton.

A number of courts, including this one, have taken the position that the doctrine in its distinctive or primary sense has no application to a case involving an injury caused by the bursting of a bottle. That is to say, these courts hold that the bare fact of the occurrence of the injury under circumstances contemplated by the rule, without more, does not furnish the basis for a legitimate inference tending to show negligence as the cause. Winfree v. Coca-Cola Bottling Works, 19 Tenn. App. 144, 83 S. W. (2d) 903, and cases cited; Davis v. Coca-Cola Bottling Co., 228 N. C. 32, 44 S. E. (2d) 337, and cases cited; Coca-Cola Bottling Co. v. Munn, 4 Cir., 99 F. (2d) 190.

The rationale of these decisions is that without regard to the responsibility of the defendant, any inference which may be drawn, without more, is not of sufficient force from a probative standpoint to justify reasonable minds in concluding that it was more probable than otherwise that negligence was the cause of the injury and hence is not sufficient to make a case for the jury. Prosser on Torts, 296, 297. Cf: Wigmore on Evidence, 2d Ed., Vol. 1, Section 41, p. 260.

But when, in addition to the circumstances attending the injury, it is shown that other bottles filled and marketed by the same bottler under substantially the same conditions exploded, and such occurrences are not too remote in point of time, it is held that a prima facie

case of liability is made out, requiring the issue of the defendant's negligence to be submitted to the jury. Graham v. Cloar, Tenn. App., 205 S. W. (2d) 764; Winfree v. Coca-Cola Bottling Works, 19 Tenn. App. 144, 83 S. W. (2d) 903, and cases cited; Coca-Cola Bottling Co. v. Munn, 4 Cir., 99 F. (2d) 190; Davis v. Coca-Cola Bottling Co., 228 N. C. 32, 44 S. E. (2d) 337, and cases cited.

An examination of the decisions of this Court dealing with similar cases will show that they were treated as ordinary cases of circumstantial evidence in which the circumstances immediately connected with the injury were considered along with other circumstances pertinent to the issue with a view of determining whether, when all taken together, they were sufficient in probative value to make a question for the jury. Graham v. Cloar, supra; Winfree v. Coca-Cola Bottling Co., supra. In North Memphis Savings Bank v. Union Bridge & Construction Co., 138 Tenn. 161, 196 S. W. 492, the court comments on the applicable principle. After a discussion of the rule of res ipsa loquitur in its primary or distinctive sense, the tribunal continues: "The term res ipsa loquitur is often used in the more extensive sense of including all pertinent facts both antecedent and subsequent to the infliction of the injury, which facts tend in and of themselves to indicate the responsible human agency". 138 Tenn. at pages 177, 178, 196 S. W. at page 496.

Later, the Court adds: "Where, in addition to the facts which constitute the res in its distinctive sense, that is the infliction of the injury, and the physical agency inflicting it, there appear other facts which in and of themselves point to the responsible human cause,

a case of circumstantial evidence is produced rather than a pure case of res ipsa loquitur. However, in considering these additional circumstances the inference to be drawn from the res as above defined still operates in connection with the additional facts.'' 138 Tenn. at pages 182, 183, 196 S. W. at page 497.

In the same case the Court points out that in this jurisdiction ''the office of the rule of res ipsa loquitur is, in the main, to determine whether, on the state of facts shown, the case should go to the jury.'' North Memphis Savings Bank v. Union Bridge & Construction Co., supra, 138 Tenn. at page 188, 196 S. W. at page 498. This pronouncement is of no little importance in clarifying the application of the doctrine.

Obviously there is no difference in principle between the judicial process employed in applying the doctrine of res ipsa loquitur in its primary or distinctive sense and that employed in determining the probative value of circumstantial evidence generally.

In Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 927, 52 L. R. A. 922; 82 Am. St. Rep. 630, the Court, per Cullen, J., correctly says: ''When the facts and circumstances from which the jury is asked to infer negligence are those immediately attendant on the occurrence, we speak of it as a case of res ipsa loquitur; when not immediately connected with the occurrence, then it is an ordinary case of circumstantial evidence.''

Prof. Prosser adds: ''The ill-starred attempt to distinguish between the two is at the bottom of most of the confusion (about the doctrine of res ipsa loquitur). In the nature of the proof involved, a res ipsa case does not differ from the ordinary case in which the circumstances indicate that some one must have been negligent,

and point to the defendant as the one responsible.'' Prosser, The Procedural Effect of Res Ipsa Loquitur, Minnesota Law Review, February, 1936, Vol. 20, pages 241, 258.

■ The doctrine of res ipsa loquitur is based on everyday experience and provides a formula for testing the relevancy or probative value of the circumstances immediately attending an injury, with a view of determining whether the inferences to be drawn therefrom furnish a rational basis for a conclusion that it is more likely than not that (1) the injury was due to the negligence of some one, and (2) that the defendant was the responsible party. Otherwise stated, it is a mere formula for subjecting the circumstances to the test of every day experience to determine whether a reasonable mind might accept the inferences to be drawn from the circumstances as adequate to support a conclusion with respect to the two determinative propositions. As more tersely said, the doctrine ''is not an arbitrary rule [but] is rather a common sense appraisal of the probative value of circumstantial evidence.'' George Foltis, Inc. v. New York, 287 N. Y. 108, 38 N. E. (2d) 455, 153 A. L. R. 1122; Quinley v. Cocke, 183 Tenn. 428, 438, 192 S. W. (2d) 992.

It may not be amiss to point out that some times it is said that where the res ipsa rule is applicable the defendant's negligence is, or may be, inferred from the fact of the injury. This is inaccurate and confusing. The basis for the inference is not the fact of the injury but the circumstances immediately attending it.

■ In the present case the plaintiff relies exclusively upon evidence consisting of the circumstances immediately connected with the occurrence of the injury and

evidence of the explosion of other bottles both before and after that occurrence. This evidence stands undisputed in the record. Where this is true, the question resolves itself into one of the probative value of the circumstances,—that is, whether they furnish a basis for a legitimate inference that the injury was due to negligence, and that the defendant was the party responsible. This is a question for the judge in the first instance. Cude v. Culberson, Tenn. App., 209 S. W. (2d) 506, 512, 513, and cases cited. It is to be tested and determined not by the processes of the trained logician or scientist, but by the "conclusions and tests of everyday experience". Wigmore on Evidence, 2d Ed., Vol. 1, Section 27. If, when so tested, the circumstances furnish a basis for an inference which a reasonable mind might accept as adequate to support a conclusion, then the issue is one for the jury. Cf., Tennessee Cartage Co. v. Pharr, 184 Tenn. 414, 199 S. W. (2d) 119; Cude v. Culberson, supra; Wigmore on Evidence, 2nd Ed., Vol. 5, Section 2494.

That body may or may not draw the inference, as its judgment dictates. North Memphis Savings Bank v. Union Bridge & Construction Co., 138 Tenn. 161, 188, 196 S. W. 492; Bouchard & Sons v. Keaton, 9 Tenn. App. 467, 480. If it does draw it, the inference is to be considered by them along with all of the other evidence, in determining the preponderance of probabilities with respect to the determinative issues.

So we think it clear that in determining the probative value of the particular circumstances in the present case they must be tested by the principle of the doctrine of res ipsa loquitur without regard to whether that doctrine be applied eo nomine. Cf. Coca-Cola Bottling Works

v. Sullivan, supra, 178 Tenn. 405, page 413, 158 S. W. 721, 171 A. L. R. 1200; and Graham v. Cloar, supra.

As they are usually stated, the conditions necessary to the application of the principle are three-fold: (1) the accident must be of a kind which ordinarily does not occur in the absence of some one's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. Prosser on Torts, 295; Wigmore on Evidence, 3d Ed., Vol. 9, Sec. 2509.

With respect to the purpose of the first requirement, it is well said that it "is of course only another way of stating a rule of circumstantial evidence that the accident must be such that in the light of ordinary experience it gives rise to an inference of negligence." Prosser on Torts, 296. The requirement recognizes that while it is a matter of common knowledge that there are many accidents which may often occur without any one's fault, "there are occurrences which in themselves bespeak negligence." Idem. But it is, of course, not sufficient in any case to show merely that the injury was due to some one's negligence. It is necessary to go further and show that the particular defendant was the party responsible. This is the purpose of the second requirement—that is, "to focus the inference of negligence upon the defendant". Idem 298. The third condition, closely allied to the second, does not require that it be made to appear that the plaintiff was completely inactive, but only that there be evidence removing the inference of his own responsibility. Idem 300.

The burden in this respect is on the plaintiff. To discharge it he must produce evidence which a reasonable

mind might accept as adequate to support a conclusion with respect to the particular issue. Naturally the probative force of the evidence will depend upon the inherent nature of the circumstances. As already said, whether the evidence meets the test is a question for the judge in the first instance. Cude v. Culberson, supra, and cases cited. If it does, he submits the issue to the jury, who may or may not accept it as adequate when considered with all the other facts and circumstances in the case.

In the instant case, we may assume for present purposes that the circumstances attending the injury, fortified by evidence with respect to explosions of other bottles filled and sold by the defendants was sufficient to make a prima facie case of negligence on the part of some one. The determinative question is whether the circumstances were sufficient to permit an inference that the defendant was the party responsible. This turns upon whether they meet the requirements of the rule with respect to the control by the defendant of the instrumentality causing the injury.

With respect to this requirement, Prof. Prosser, in his treatise on Torts, page 298, says: " 'Control' is a more or less flexible term, and has been interpreted to mean merely that the defendant must have the right of control and the opportunity to exercise it, as in the case of a principal who is present when his agent is driving a car, of a landowner who permits visitors to come upon his premises. Some courts have carried 'control' to ridiculous lengths by requiring that the defendant be in possession of the instrumentality at the time of the accident—thus a customer who sits down in a chair in a store has been denied recovery when it collapses. Of course this is wrong; it loses sight of the real

purpose of the requirement in the attempt to reduce it to an absolute rule. All that is necessary is that the defendant have exclusive control of the factors which apparently have caused the accident; and one who supplies a chattel to another may have had sufficient control of its condition although it has passed out of his possession.''

■ Although there are decisions to the contrary, this view has been recognized and applied to cases involving injuries sustained by the bursting of bottles. Bradley v. Conway Springs Bottling Co., 154 Kan. 282, 118 P. (2d) 601; Benkendorfer v. Garrett, Tex. Civ. App., 143 S. W. (2d) 1020; Goldman & Freiman Bottling Co. v. Sindell, 140 Md. 488, 117 A. 866; Payne v. Rome Coca-Cola Bottling Co., 10 Ga. App. 762, 73 S. E. 1087; Seale v. Coca-Cola Bottling Works, 297 Ky. 450, 179 S. W. (2d) 598; Coca-Cola Bottling Works v. Seale, 299 Ky. 409, 185 S. W. (2d) 685; Hotel Dempsey v. Teel, 5 Cir., 128 F. (2d) 673; Ortego v. Nehi Bottling Works, 199 La. 599, 6 So. (2d) 677; Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S. W. 497, 39 A. L. R. 1001.

■ . As applied to the particular factual situation, the rule deducible from these cases is that it is not necessary that the defendant have control of the bottle at the time of the injury, but it is sufficient if he had exclusive control when the acts apparently causing the injury occurred, provided the plaintiff show that the condition of the bottle or its contents had not been changed after it left the defendant's possession. See, 22 Am. Jur. 214, 215 and note.

Although under the facts there appearing the doctrine was held not applicable in the case of Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S. W. 721, 171

A. L. R. 1200, the rationale of that opinion is in accord with this view.

The defendant relies mainly on the Sullivan case to support the contention that when tested by the principle of res ipsa loquitur as expounded in that case, the evidence was insufficient to take the case to the jury under the second count of the declaration. Under the rule there announced, there would be no doubt about the result. The evidence offered by the plaintiff herself showed opportunities for tampering with the bottle after it reached her hands which were identical in nature and extent with those which furnished the basis for the decision in the Sullivan case. However, there are present in this case other undisputed facts which render it unnecessary to apply the rule of the Sullivan case, and we prefer to utilize them as a basis for our decision.

As already indicated, the issue of whether the injury was due to negligence of the defendants in overcharging the beverage with gas was squarely submitted to the jury under the first count. Hence, we need not notice that theory further than to take occasion to dismiss as being utterly unrealistic and fantastic for serious consideration, the conjecture sometimes advanced, impliedly at least, that in a case of this kind some mischievous or malevolent person, having no particular victim in mind, may have removed the cap from the bottle in question after it left the bottler's hands and before recapping it, added to the contents carbonic gas in a quantity sufficient to cause the bottle to explode. Tested by every day experience such a maneuver is beyond any probability inherent in the situation.

The right of having the jury pass on the issue of negligence in overcharging the beverage having been granted

plaintiffs in the submission of the first count, there was left for consideration under the second count, only the hypothesis that the accident causing the injury was due to a defect in the bottle. In no view of the evidence was any other theory suggested.

■ It may be assumed that, nothing else appearing, it was reasonably to be inferred that the explosion of the bottle was due to its defective condition resulting from negligence. The question then is, whether the circumstances shown by the undisputed evidence furnished a basis for a further inference that the defendant was responsible for that condition. This depends upon whether the evidence eliminated the probability that any act of the plaintiff or a third party operated as a causative factor. The burden in this respect was on the plaintiff. Unless it was discharged, an inference that the defendant was responsible for the defect in the bottle which might otherwise have been drawn from the circumstances, was not permissible. 22 Am. Jur. 214, Section 97, note 2; Prosser on Torts, Section 300.

■ There is no escape from the conclusion that the complainant failed in this vital respect. She not only did not make the requisite showing but in fact produced undisputed evidence indicating the contrary. It is common knowledge that the tensile strength of glass bottles may be weakened by a fracture and the undisputed evidence left it no less probable than any other hypothesis, that the bottle was so weakened after it left the defendants' hands. It appeared without dispute that patrons customarily served themselves from the ice box and in doing so moved the ice and bottles about in order to find the particular beverage of their choice. Cases of beverages sold by other bottlers were delivered to

the storeroom where defendants' bottles were kept. Plaintiff offered no evidence as to whether in making such deliveries it was necessary for the servants of other bottlers to move or otherwise come in contact with cases containing defendants' product. For all that appears, the former may have been stacked on the latter. In any event the burden was on plaintiff to produce evidence tending to eliminate any probability that the acts of the deliverymen contributed to the cause of the accident.

Moreover, while there was some testimony of a general nature as to the care used by Mr. Boykin in handling the bottles, there was none of a substantial nature as to Mrs. Boykin's activities in this respect.

But it is not necessary to rest the decision solely on the failure of the proof in the foregoing respects.

Of much more significance is the fact that several hours before the accident occurred, the ice man had placed a 50-pound block of ice on top of the bottles, including the one in question, and had proceeded to break it up into small lumps with his ice pick. Although it is not necessarily determinative, it may be said that in doing this, the ice man was in reality rendering a service for the plaintiff, and to that extent was her servant by whose acts she was bound.

By the activities of the ice man, considered in connection with other pertinent circumstances, the continuity of the control by the defendant over the apparent cause of the accident was broken. There was thus left no rational basis for an inference that it was more likely than not that the defendant was responsible for the only cause to which, under the evidence, the injury reasonably could be ascribed. For, under the showing made by the plaintiff, the inference that the acts of others having

access to the bottles after they left the hands of the defendant operated as a causative factor, was of equal force with any inference that the defendant was the responsible party.

It is assigned as error that the judge charged the jury "that in determining whether the defendant was negligent in the bottling of Double-Cola, you will consider evidence only with respect to whether the defendant overcharged its bottles with carbonic gas since the act of negligence alleged and relied on only is that such bottles were too highly charged."

In view of the conclusion we have reached, this was not reversible error. As said, the only other hypothesis presented by the evidence was that the bursting of the bottle was due to its defective condition, and for the reasons stated, there was no evidence to take the case to the jury on the question of the defendant's responsibility in that connection. This left only the hypothesis submitted by the judge.

Two other assignments of error are based on the refusal by the judge to give in his charge two special requests submitted by the plaintiff relative to the competency of evidence with respect to the explosion of bottles other than that which caused the injury and the right of the jury to draw a conclusion of negligence on the part of the defendant from the fact that several bottles burst. Without implying that these requests as drawn should have been given in any event, it is sufficient to say, considering the charge as given and the evidence in the case, it cannot be held to affirmatively appear that the failure to give them affected the result. Hence in no view of the matter would a reversal be authorized on

that account. Code Section 10654; Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461.

Upon the whole case we are satisfied that there was substantial evidence to support the verdict on the first count and no evidence to justify the submission to the jury of the issue of the defendant's negligence upon any other theory.

Finding also no prejudicial error in the charge, the result is that the judgments in both cases must be affirmed at the cost of the plaintiffs.

Baptist and Swepston, JJ., concur.