IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**BOBBIE J. BYRD and WILLIE BYRD,**

    Plaintiffs-Appellees,

Vs.

**FIRST TENNESSEE BANK,**

    Defendant-Appellant.

Shelby Circuit No. 42947 T.D.
C.A. No. 02A01-9610-CV-00252

FILED

**June 20, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

FROM THE CIRCUIT COURT OF SHELBY COUNTY
THE HONORABLE JOHN McCARROLL, JR.

Jeffrey Jones of Memphis
For Appelles

William M. Jeter and Richard Sorin; Glassman, Jeter,
Edwards & Wade, P.C., of Memphis
For Appellant

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

    This is a premises liability action brought by plaintiffs, Bobbie J. Byrd and husband,

Willie Byrd, against defendant, First Tennessee Bank, for Mrs. Byrd's injuries sustained on June

12, 1991.[1] Mrs. Byrd, seeking information concerning the bank's certificates of deposit, was directed to take a seat in the waiting area of the Raleigh Branch of the First Tennessee Bank. When she sat down in the area, the chair collapsed, and Mrs. Byrd fell to the floor sustaining injuries. The Byrds filed suit against First Tennessee in circuit court on December 11, 1991 and alleged that First Tennessee failed to properly maintain and inspect the chair, failed to warn Mrs. Byrd of a defective chair, and failed to provide a safe chair for Mrs. Byrd. The Byrds aver that the alleged acts of negligence were the direct and proximate cause of Mrs. Byrd's injuries.

By order entered June 2, 1993, the trial court granted partial summary judgment in favor of First Tennessee regarding all allegations contained in the original complaint. By the same order, the trial court permitted the Byrds to amend their complaint to allege the additional legal doctrine of *res ipsa loquitur*. The Byrds filed an amended complaint alleging *res ipsa loquitur* on June 10, 1993. A jury trial was held on May 22 and 23, 1996, and the jury returned a verdict in favor of Mrs. Byrd for $100,000.00 and in favor of Mr. Byrd for $15,000.00. The trial court entered judgment on the jury verdict and subsequently denied First Tennessee's motion for a new trial and for judgment notwithstanding the verdict. First Tennessee has appealed, and the only issue for review is whether the trial court erred in denying First Tennessee's motion for a directed verdict and for judgment notwithstanding the verdict.

Courts reviewing a motion for directed verdict may not weigh the evidence, **Benton v. Snyder**, 825 S.W.2d 409, 413 (Tenn. 1992); **Holmes v. Wilson**, 551 S.W.2d 682, 685 (Tenn. 1977), or evaluate the credibility of the witnesses. **Benson v. Tennessee Valley Electric Coop.**, 868 S.W.2d 630, 638-39 (Tenn. App. 1993). In **City of Bartlett v. Sanders**, 832 S.W.2d 546 (Tenn. App. 1991) this Court said:

> The rule for determining a motion for directed verdict requires the trial judge and the reviewing court on appeal to look to all of the evidence, taking the strongest legitimate view of it in favor of the opponent of the motion and allowing all reasonable inferences from it in his favor. The court must discard all countervailing evidence, and if there is then any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. A verdict should not be directed if there is any material evidence in the record that would support a verdict for the plaintiff under any of plaintiff's theories.

---

[1]Mr. Byrd's suit is for loss of services and consortium.

*Id*. at 549 (citations omitted).

The *res ipsa loquitur* doctrine is a specialized doctrine that provides the plaintiff with an inference arising from circumstantial evidence enabling the jury to find that the defendant was negligent if the plaintiff proves certain elements. *Poor Sisters of St. Francis v. Long*, 230 S.W.2d 659, 663 (Tenn. 1950); *Summit Hill Assocs. v. Knoxville Utils. Bd.,* 667 S.W.2d 91, 95-96 (Tenn. App. 1983). The doctrine is based on everyday experience and requires no more than a common sense appraisal of the strength of the plaintiff's circumstantial evidence. *Quinley v. Cocke*, 183 Tenn. 428, 438, 192 S.W.2d 992, 996 (1946); *Memphis St. Ry. Co. v. Stockton*, 143 Tenn. 201, 206-07, 226 S.W. 187, 189 (1920); *Stinnett v. Wright*, 59 Tenn. App. 118, 125, 438 S.W.2d 357, 361 (1968); *Davis v. Sparkman*, 55 Tenn. App. 65, 70, 396 S.W.2d 91, 93 (1964); *Boykin v Chase Bottling Works*, 32 Tenn. App. 508, 524, 222 S.W.2d 889, 896 (1949).

Under the doctrine of *res ipsa loquitur*, a plaintiff need not prove specific acts of negligence. *Summit Hill Assocs.,* 667 S.W.2d at 96. Instead, the evidence must be sufficient to enable a fact-finder to conclude that the injury was caused, more probably than not, by the defendant's negligence. *Stinnett,* 438 S.W.2d at 361. The necessary requirements for application of the doctrine of *res ipsa loquitur* are (1) that there must be a "thing" causing the injury; (2) the "thing" must be under the exclusive control of the defendant, and (3) the "thing" must be shown to be of such a nature that injury does not ordinarily result from its careful management. *Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn. App. 1992).

The strength of the evidence will vary with the facts of each case, and the strength of the inference of the defendant's negligence will likewise vary from reasonable probability to practical certainty. *Sullivan v. Crabtree*, 36 Tenn. App. 469, 477, 258 S.W.2d 782, 785 (1953). However, a plaintiff must present enough evidence so as to enable the fact-finder to make more than a sheer leap of faith. *Underwood v. HCA Health Services of Tenn., Inc.,* 892 S.W.2d 423, 427 (Tenn. App. 1994). *Res ipsa loquitur* does not apply in those situations where reasonable persons could not conclude that the defendant's negligence, more probably than not, caused the plaintiff's injury. *Id.* Thus, the doctrine does not apply in cases where the plaintiff's injury could reasonably have occurred even without the defendant's negligence. *Id.*

First Tennessee asserts that the trial court erred in allowing the case to go to the jury because the Byrds failed to satisfy two essential elements of *res ipsa loquitur*. First, the Byrds

did not introduce evidence to show that the instrumentality (chair) was of such a nature that injury does not ordinarily result from its careful management, and second, the evidence established that the chair was not under the exclusive management and control of First Tennessee.

Possessors of property and those acting on their behalf owe a duty of reasonable care to patrons, and this duty includes the duty to maintain the premises in a reasonably safe condition, the duty to inspect the premises, the duty to discover dangerous conditions reasonably recognizable by common experience and ordinary prudence, and the duty to either remove or to warn of the dangerous condition the possessors know or should reasonably know about. *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 823 (Tenn. App. 1992).

In the case before us, First Tennessee furnished the chair for use by its customers. Mrs. Byrd was specifically invited to take a seat in the waiting area. The record establishes that the chair in question had been in the bank for as long as five years. Mrs. Byrd testified that after the chair collapsed, she noticed a crack or split in the seating area of the chair. A First Tennessee employee, however, testified that she observed Mrs. Byrd sit in the chair, that the front legs of the chair somewhat protruded or popped out, and that Mrs. Byrd, in fact, did not fall all the way to the floor. With either scenario, it appears that there was some defect in the chair. We find it difficult to understand how a chair can collapse in the absence of some structural defect. Certainly a chair in a commercial establishment is subjected to rather constant or prolonged use, and those furnishing such a chair to patrons of the establishment should be aware that chairs are not indestructible, but can become unstable because of defects resulting from use. It does appear that a reasonable inspection of the chair would reveal a defect or condition of a chair joint that would allow the front legs to protrude or pop out as First Tennessee's employee indicated the subject chair did. First Tennessee's proof is that it had no established procedure for inspection of the facilities for its customers, nor was there any proof that an inspection of this particular chair or the chairs in this area were made at any time reasonably preceding the accident.

A plaintiff relying on *res ipsa loquitur* is not required to rule out all nonnegligent causes for the occurrence, but need show only that the defendant's negligence more probably than not caused the injury. *Underwood,* 892 S.W.2d at 426-27. In *Sullivan v. Crabtree,* this Court said:

The effect of a case of *res ipsa loquitur*, like that of any other

4

case of circumstantial evidence, varies from case to case, depending on the particular facts of each case; and therefore such effect can no more be fitted into a fixed formula or reduced to a rigid rule than can the effect of other cases of circumstantial evidence. The only generalization that can be safely made is that, in the words of the definition of *res ipsa loquitur*, it affords "reasonable evidence," in the absence of an explanation by defendant, that the accident arose from this negligence.

The weight or strength of such "reasonable evidence" will necessarily depend on the particular facts of each case, and the cogency of the inference of negligence from such facts may of course vary in degree all the way from practical certainty in one case to reasonable probability in another.

36 Tenn. App. at 476-77, 258 S.W.2d at 785.

A chair furnished for use of business patrons simply does not ordinarily collapse if it has been properly managed. This statement is supported by the holding of this Court in *Parker v. Warren*, 503 S.W.2d 938 (Tenn. App. 1973). In *Parker*, plaintiff was attending a wrestling match and was seated in bleachers furnished for spectators. *Id.* at 941. The board upon which she was seated broke, and plaintiff fell six or eight feet to the floor below, sustaining injuries. *Id.* Plaintiff's suit alleged that the bleachers were under the exclusive control of defendants and that defendants failed in their duty to keep the bleachers in a reasonably safe condition. *Id.* After a judgment on the jury verdict for the plaintiff, the defendant appealed, and one of the assignments of error was that the trial court erred in allowing the case to go to the jury on the doctrine of *res ipsa loquitur*. *Id.* Affirming the trial court, this Court said:

We hold it to be an unusual occurrence for a seat at a wrestling match to break under the weight of the patrons thereon, and in the ordinary course of things this does not happen. Where the thing causing the harm is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, if affords reasonable evidence, in the absence of explanation by he defendant, that the accident arose from want of care. *Southern Gas Corporation v. Brooks* (1961), 50 Tenn. App. 1, 359 S.W.2d 570. The foregoing statement of the doctrine of *res ipsa loquitur* is applicable to this lawsuit, and the happening of the event under the circumstances stated would warrant an inference of negligence upon the part of the defendants Berry and Warren. It is not necessary that the plaintiff prove a specific at of negligence; the inference makes a jury question. When, as here, the prerequisites of the doctrine are met the defendant must come forward with explanatory proof, and the jury is permitted to choose the inference of the defendant's negligence in preference to other permissible or reasonable inferences. *Coca-Cola Bottling Works v. Sullivan* (1942), 178 Tenn. 405, 158 S.W.2d 721, 171 A.L.R. 1200.

503 S.W.2d at 942. We believe the proof in this case satisfies the requirements set out in *Parker*.

5

First Tennessee also asserts that the Byrds failed to prove that the bank had exclusive control of the chair at the time of the accident. In ***Boykin v. Chase Bottling Works***, 32 Tenn. App. 508, 222 S.W.2d 889 (1949), this Court in considering the requirement concerning control by the defendant of the instrumentality causing the injury said:

> With respect to this requirement, Prof. Prosser, in his treatise on Torts, page 298, says: "'Control' is a more or less flexible term, and has been interpreted to mean merely that the defendant must have the right of control and the opportunity to exercise it, as in the case of a principal who is present when his agent is driving a car, or a landowner who permits visitors to come upon his premises. Some courts have carried 'control' to ridiculous lengths by requiring that the defendant be in possession of the instrumentality at the time of the accident -- thus a customer who sits down in a chair in a store has been denied recovery when it collapses. Of course, this is wrong; it loses sight of the real purpose of the requirement in the attempt to reduce it to an absolute rule. All that is necessary is that the defendant have exclusive control of the factors which apparently have caused the accident; and one who supplies a chattel to another may have had sufficient control of its condition although it has passed out of his possession."

32 Tenn. App. at 525-26, 222 S.W.2d at 897.

As previously noted, the defendant in the case before us maintained the chair in question in an area assigned for waiting customers and furnished the chair for the use of the customers while waiting. First Tennessee was in charge of the chairs and had the opportunity to inspect and ascertain whether the chairs were safe for the use intended. In effect, First Tennessee had exclusive control of the factors which could have reasonably caused the accident. The mere fact that third parties had access to the chair does not preclude First Tennessee from having exclusive control over the chair within the meaning of the doctrine of *res ipsa loquitur*. ***See Trujeque v. Service Merchandise Co.***, 872 P.2d 361, 366 (N.M. 1994). In ***Gresham v. Stouffer Corp.***, 241 S.E.2d 451 (Ga. Ct. App. 1978), the Georgia Court of Appeals addressed the ownership, operation and maintenance of a chair and stated:

> [T]he defendant owned and operated the restaurant. It is also clear that the chair was furnished by the restaurant to the plaintiff for his use as a business invitee. Under these circumstances, a jury would be authorized to conclude that the chair was in the full control of the defendant and that the defendant was responsible for its maintenance.

*Id.* at 452. Likewise, a New York court addressed a similar issue and held that evidence that a private club owned a chair that broke, that the club's employees took the broken chair after the

accident, and that no evidence was offered to support an inference of another cause of the accident were sufficient to demonstrate ownership and control and to warrant submission of the case to the jury under the doctrine of *res ipsa loquitur.* ***Finocchio v. Crest Hollow Club at Woodbury, Inc.***, 584 N.Y.S.2d 201, 202 (N.Y. App. Div. 1992).

Chairs are designed to hold their occupants, not to collapse, and chairs are not expected to collapse while being subjected to their intended use in the normal and customary manner. ***Pear v. Labiche's Inc.***, 301 So. 2d 336, 338 (La. 1974).

A chair collapse is something that normally does not occur in the absence of a defect in the chair that normally could be ascertained by inspection, and there is evidence that the chair in this case was in the exclusive control of First Tennessee. Once the Byrds established these elements, they satisfied their burden of making a *prima facie* case from which the jury could infer negligence. It then was incumbent upon First Tennessee to come forward with explanatory proof. ***Parker***, 503 S.W.2d at 942. The doctrine of *res ipsa loquitur* does not change the plaintiff's burden of proving negligence by a preponderance of the evidence; it merely shifts the burden of going forward to the defendant, who risks losing the case if insufficient proof is submitted to counter the inference created by *res ipsa loquitur.* ***Scarbrough v. City of Lewisburg***, 504 S.W.2d 377, 382 (Tenn. App. 1973).

Accordingly, the trial court correctly denied First Tennessee's motion for directed verdict. The judgment of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as are necessary. Costs of appeal are assessed against First Tennessee.

 

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

 

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**