INGERSOLL *v.* DETROIT & MACKINAC RAILWAY CO.

1. DAMAGES—SURVIVAL ACT—STATUTES—AMOUNT RECOVERABLE.
   In an action by an administrator for the wrongful death of defendant's employé, neither damages for loss of time or pain
   and suffering, caused by his injury prior to his death, are recoverable, where the cause of action arose under Act No. 89,
   Pub. Acts 1905, limiting the amount recoverable to the
   pecuniary loss suffered by those who were entitled to share
   in his estate.

2. SAME—PERSONS DEPENDENT—DEATH BY WRONGFUL ACT—NEGLIGENCE.
   Although deceased had a wife and infant whom he had abandoned before his death, and whom he never supported, the
   law imposed upon deceased a duty to support them and the
   administrator was entitled to recover for their benefit the
   probable amount of contributions, whether voluntary or
   forced, that the widow and child might be expected to have
   received from him during his expectancy.

Error to Ogemaw; Sharpe, J.   Submitted October 7, 1910.   (Docket No. 7.)   Decided November 11, 1910.

Case by Elbert V. Ingersoll as administrator of the estate of William Quigley, deceased, against the Detroit & Mackinac Railway Company for the negligent killing of the deceased.   A judgment for defendant entered by the court on the opening statement of plaintiff's attorney is reviewed by plaintiff on writ of error.   Reversed.

*De Vere Hall,* for appellant.

*James McNamara* and *Charles R. Henry* (*Guy D. Henry,* of counsel), for appellee.

STONE, J.   The declaration with the rule to plead in this cause was filed January 12, 1909, and set forth in due form actionable negligence on the part of the defendant resulting in the injury to, and death of, deceased, and due care on his part, claiming damages in the sum of $20,000 to himself, in consequence of such injuries, from his loss of earnings, and the pain and suffering that he endured during his lifetime.   It also claimed damages in a similar amount for the pecuniary injury sustained by the widow and child as next of kin by reason of being deprived of means of support, and contributions that deceased would have made to them had he lived.   After service the defendant appeared and pleaded the general issue.

At the trial the case was disposed of by the court upon the opening statement of plaintiff's counsel of what he proposed to prove.   That statement was, in substance, that the suit was brought by plaintiff as administrator of the estate of William Quigley, deceased, one who was employed by the defendant as brakeman on its line of road extending from Gooder, in Ogemaw county, north into Oscoda county; that on November 6, 1906, after dark, he was acting as brakeman on the front end of a train being pushed southerly from Oscoda county into Gooder, and it is the claim of plaintiff that this injury

arose through the negligence of defendant, as set forth in the declaration herein, and that as a result of such injuries William Quigley died on November 24, 1906, at Rose City, in Ogemaw county. Here counsel for plaintiff made a statement offering to show the death of said William Quigley as a result of such injuries, the appointment of plaintiff as his administrator, the several acts of negligence set forth in the declaration causing the injury to, and death of, deceased, and his want of contributory negligence, and then passed to the subject of damages. He offered to show that at the time of his injury Mr. Quigley was of good health, and about 30 years of age, married to the young girl referred to in the declaration, when she was about 16 years of age, at Two Harbors, near Duluth, in the State of Minnesota; that this marriage was a forced one, brought about because deceased had seduced the girl, and was arrested and confined, and then lawfully married under the laws of that State; that later he had deserted and abandoned her; that there was one child as the result of such marriage, being the one referred to in the declaration; that the widow and child are both still living at Milwaukee, Wis.; and that she had no means of support, other than deceased would either voluntarily contribute, or that which could be forced from him under the law, other than such as her father and her family may contribute. At the time deceased was so injured and died, Mrs. Quigley did not know where he was, and he had never contributed anything either to her support or that of the child; but the marriage was a lawful one, and was so treated and regarded, and she is the lawful widow, and the child is the lawful child of such marriage.

Plaintiff's first contention is that, based on that lawful marriage relation, such widow and child are entitled to have damages assessed with reference to his death for the reason that the law would compel him to contribute to their support, to her during her life, and the child during its minority, and that by his death she and such child lost

this resource which the law gives them, whether it was a voluntary or involuntary contribution; that contributions are of two characters, one that which the law compels by reason of either the common law, or some statutory declaration arising out of the relationship of the parties, and another which exists by voluntary support given by the deceased to some other next of kin; that the widow and child belong to the first of these, and the fact that no contributions have been made in the past does not deprive them of the right to have damages arising from the death of deceased now assessed; that, as to the second, where the law does not supply forced contributions, it would be necessary to show some act of the deceased, either of contributions in the past, or some situation which would warrant reasonable expectation of contributions in the future, before damages could be assessed. But in this case, and in so far as this branch of the claim of damages is concerned, the plaintiff stands squarely on the legal ground that both the statute and common law of Minnesota, where the marriage took place, of Wisconsin, where the widow and child resided at the time of the death of plaintiff's intestate, and of Michigan, where the death took place, compel him to support his wife and child, and this furnishes a basis on which damages may be assessed.

Passing to the second ground of right of recovery, as stated, the injury took place on November 6, 1906, and plaintiff will show by the proofs that deceased was an intense sufferer from that time until the time of his death, November 24th following. This fact will be disclosed by the testimony of the nurse who was in attendance during 12 of the intervening days, and at the time of his death; and, on the right to assess damages which accrued to deceased by reason of such injury between said days, plaintiff will show that there was in force in this State, at the time of this injury and death, the survival act, being section 10117, 3 Comp. Laws, and the limited liability act, being Act No. 89, Pub. Acts 1905. That under the survival act deceased had a right of action for the 18 days' time that

he lost between his injury and death, and, in addition to such right, he had a right under the survival act to recover for the pain and suffering that he endured during that time, and that the jury should consider and determine what would be reasonable compensation for such loss of time, plus the pain and suffering so endured. In this statement is excluded all right of action for any prospective damage which would accrue during the probable life of deceased, by reason of his death on November 24, 1906, planting plaintiff's right squarely upon the survival act, which gave deceased during his life the right to recover for the two elements of lost time, pain and suffering, which latter will be shown were large and substantial in amount, and which counsel described in detail. With reference to the effect of Act No. 89, Pub. Acts 1905, it was the claim of counsel that it affected the third element of prospective damages only, and that as to this it was to be measured by the contributions that would probably thereafter be made, the same as under the death act.

At the close of said opening statement, counsel for defendant moved the court to direct a verdict for defendant, for the reason that the opening statement of counsel for plaintiff contained no basis upon which the jury could assess damages. Defendant's motion was granted, and verdict and judgment were directed and entered for defendant. The plaintiff has brought error, and by proper assignments of error two questions are presented:

(1) Did the court err in refusing to permit the jury to assess damages in favor of plaintiff under the survival act (section 10117, 3 Comp. Laws) for the time lost after the injury, and before the death of deceased, and for the pain and suffering then endured by him?

(2) Did the court err in refusing to permit the jury to assess damages in favor of the plaintiff under Act No. 89, Pub. Acts 1905, for contributions, voluntary or forced, that would probably have been made by deceased, in favor of the widow during her probable life, and the child during its minority, for the probable life of deceased, and in directing a verdict?

We shall consider these questions in the order named.

1. It will be borne in mind that the plaintiff's intestate was injured November 6, 1906, and died November 24, 1906, while Act No. 89, Pub. Acts of 1905, was in force. No action was brought by deceased, and this action was begun by the administrator January 12, 1909. We have no doubt that Act No. 89, aforesaid, fixes absolutely the measure of damages to be recovered, in case of liability. We are of opinion that this question is answered against the contention of plaintiff by the case of *Norblad* v. *Railway Co.*, 156 Mich. 697 (118 N. W. 595). That was a well-considered case. There was a motion for rehearing which delayed its publication in the report. In the meantime *Walker* v. *Traction Co.*, 156 Mich. 514 (121 N. W. 271), was decided, and the *Norblad Case* cited. We must adhere to the doctrine announced in these cases, and hold that the circuit judge decided correctly upon this question.

2. This brings us to the consideration of a more difficult question. The plaintiff claims that even under Act No. 89, aforesaid, the court erred in its refusal to let the jury determine what pecuniary loss the widow and child sustained by reason of the death of the husband of the one, and the father of the other. The circumstances of the case are peculiar. It appears that the marriage was lawful, that the child was born as a result of such marriage, and that at the time the deceased was injured and died the wife did not know where he was, and that he had never contributed anything to her support nor that of the child. The plaintiff contends that contributions of a husband and father may be voluntary, or they may be forced; that the law would compel decedent to contribute to the widow during her life, and to the child during its minority; that by death she and the child lost this resource which the law gives, whether it was a voluntary, or an involuntary, contribution; that the common and statute law of Minnesota, where the marriage took place, of Wisconsin, where the widow and child resided at the time of the death, and

of this State, where the death took place, would compel the decedent to support his wife and child; and that this furnishes a basis on which damages may be assessed by the jury, just as the court could assess damages, or fix liability, against decedent, had he been arraigned before it for a failure to contribute to their support. The defendant urges that no basis for damages was furnished in the opening statement of counsel; that the wife and child had no reason to expect the husband and father to contribute to their support; that damages must be proved by the circumstances, by capacity to earn, and by disposition to contribute pecuniarily to the aid.

The question, under the circumstances here presented, appears to be a new one in this State. In *Chicago, etc., R. Co. v. Bayfield*, 37 Mich. 205, Chief Justice COOLEY said:

"The damages recoverable in a case of this nature * * * are to be assessed with reference 'to the pecuniary injuries resulting from such death. * * *' They have no regard * * * to any *moral* obligations which may have rested upon the deceased to supply their wants. If the *moral* obligation to support near relatives were to be the criterion, we might take their poverty into account as bearing upon the extent of this obligation; but as this may or may not have been recognized, and, if recognized, may have been imperfectly responded to, it is manifest that it can be no measure of the pecuniary injury the family received, or was likely to receive, from the death. What the family would lose by the death, would be what it was accustomed to receive, *or* had reasonable expectation of receiving in his lifetime."

Should it be said in this case, as a matter of law, that the wife and child had no reasonable expectation of receiving any aid from decedent in his lifetime? To sustain the position of the circuit judge would require us to so hold.

It is urged by defendant that there was no basis for assessing damages. Had decedent been proceeded against to compel him to support his wife and child, the same difficulty would have been encountered; and yet we think

the court would have had no difficulty, after learning all of the facts, to fix a reasonable basis from which to determine the amount. Had this man been killed by a negligent act, an hour after his marriage, and before he had ever contributed a cent to the support of his wife, would it be contended that she had not suffered pecuniary loss thereby? It would seem not. What would be the basis of assessing damages in such a case? We think that they would be determined by showing the circumstances, and by evidence of the probabilities, under proper rules, as in suits brought by parents to recover damages in case of the negligent death of a young child, who had never earned a dollar. *Rajnowski* v. *Railroad Co.*, 74 Mich. 20 (41 N. W. 847). In this case it appears that the husband had abandoned his wife through no fault of hers.

Similar questions have been before the courts of other States. In 6 Thompson's Commentaries on the Law of Negligence, at section 7054, the rule is stated as follows:

"The widow is not prevented from maintaining an action for the death of her husband by negligence, by the fact that she is living in separation from him, unless she has forfeited the right to support from him by leading an abandoned life. Nor will a child be prevented from recovering for the death of his father by the fact that the father had lived away from home for many years, and had not contributed anything to the support of his wife or child"—citing many of the following cases.

In the case of *Ft. Worth, etc., R. Co.* v. *Floyd* (Tex. Civ. App.), 21 S. W. 544, it appears that James H. Floyd and the plaintiff were married at New Albany, Ind., on the 25th day of February, 1887, having met for the first time on the preceding day. A separation soon followed. Early on the morning of April 6th of the succeeding year the husband was killed in a railroad collision at Alvord, Tex. About one month thereafter the surviving wife (this plaintiff) was found to be an inmate of a house of prostitution. She brought this suit for the benefit of herself and the mother of deceased for damages on account of the alleged negligent killing. The court held that the

wife had forfeited her right to support from her husband, and that the evidence failed to show any reason on her part to expect that he would ever again have contributed towards her support had he not been killed. It was held that here the wife had trampled every claim to marital obligation under foot, and that, while there might be a case of such misconduct on the part of her husband as would preclude this defense, no such case was presented in the record. This case seems to have turned upon the fact of the misconduct of the wife, whereby she forfeited all right to expect aid from her husband.

*Gulf, etc., R. Co.* v. *Delaney*, 22 Tex. Civ. App. 427 (55 S. W. 538). This was an action for damages for wrongfully causing the death of a brakeman, William Delaney, and the verdict allowed $5,000 to the widow of the deceased, and a like amount to a son by a former divorced wife, which son was 10 years old at the time of his father's death and not shown to have ever received any support from the father. The second wife and this child joined as plaintiffs. The court says:

"Deceased was earning $60 per month at the time of his death, was 31 years old, and was strong, healthy, temperate, and industrious. He had been divorced from his first wife, the mother of his only son. No children were born of the second marriage. To allow the son $5,000 as actual damages upon the showing that the son had never received anything from his father seems to us like allowing a large sum of money where nothing would probably have been received had the deceased lived, and we hesitate to approve so large a verdict merely for the loss of the abstract right of the son to claim a support from his father; but we are unable to distinguish the case from that of *Railway* v. *Culpepper*, 19 Tex. Civ. App. 182 (46 S. W. 922). The case in this respect was thus stated in that opinion:

"'One Culpepper, before his marriage with appellee, had been divorced from his first wife, the mother of Chris and Maud, by a decree which gave to him the custody of Chris and made no provision as to Maud. At the time of the father's death Chris was 12 years and Maud 10 years of age. Maud remained with her mother,

who is still living. The evidence showed that Culpepper devoted his earnings to his wife and son, and there was no proof that he contributed to the support of his daughter. We are of opinion that Maud Culpepper was entitled to recover, since she had the legal right to support from her father, of which she was deprived by his death'"—citing many Texas cases.

*Houston, etc., R. Co.* v. *Bryant,* 31 Tex. Civ. App. 483 (72 S. W. 885). This is an action for damages alleged to have arisen upon the death of Will Bryant, instituted by his parents and his widow, Lila Bryant. The appellant requested the following charge:

"If from the evidence you believe that the plaintiff, Lila Bryant, widow of Will Bryant, voluntarily abandoned her husband with the fixed purpose of never returning to him and wholly repudiated the relation of wife to Will Bryant, and had determined not to receive any benefits or aid from him had he lived, then his death under such circumstances inflicted no injury upon her; and, consequently, though you may believe Will Bryant's death was the result of negligence on the part of defendant, no recovery can be had by her."

The court held that this charge was properly refused; that it was a clear invasion of the right of the jury to pass upon the facts and determine whether the wife was damaged by the death of her husband.

Under the circumstances of this case, should not the question of what, if any, sum might the widow and child be reasonably expected to receive from the deceased, have been submitted to the jury? Can it be said as matter of law that the wife would never learn the whereabouts of her husband and proceed against him for support?

*De Garcia* v. *Railway Co.* (Tex. Civ. App.), 77 S. W. 275, was a suit to recover damages for the death of plaintiff's husband, and to set aside a judgment. The plaintiff, after setting up her cause of action against the company on account of the death of her husband, Alcario Garcia, alleged that he had left surviving him by a former marriage two minor children, naming them, and that they had, therefore, in the same court, through their next

friend, instituted suit for damages and recovered a judgment. Fraud and collusion were charged against the minors and the defendant to defeat the claim of the widow. It appeared that several years prior to his death Alcario Garcia was married to the plaintiff, Josephine. In a former suit it had been found that the plaintiff widow had not, for more than two years prior to the death of the husband, received any pecuniary aid from him, and was not receiving any pecuniary aid from him at the time of his death, and would not have received any pecuniary aid from him had he lived. This court held that it was incumbent upon the children to act in good faith with those joined with them in the suit; that the wife, so long as she had not acted in any way to forfeit it, was entitled to support at the hands of her husband; and that a party wrongfully killing him cannot deprive her of damages by a plea that the husband had not been fulfilling the duties he owed his wife.

In *Dallas, etc., R. Co.* v. *Spicker*, 61 Tex. 427 (48 Am. Rep. 297), a judgment of $5,000 was awarded in favor of the wife for the death of her husband. The defendant asked the court to charge the jury that if the husband had left his wife and had no further communication with her, and the jury believed from the evidence that he had abandoned her for good, and at the time of his death she had no reasonable expectation of deriving any aid or advantage from the continuance of his life, then she would be entitled to but nominal damages. In holding that the defendant was not entitled to such request, the court said:

"Henry Spicker (the husband) may have left his wife for a year or more before his death, and after leaving her may have had no further communication with her, and may have intended never to return to her, or contribute to her support; yet so long as the marital relation existed, without reference to the will of the husband, the wife not being shown to have forfeited her right thereto by her own wrong, she was entitled to a decent support in accordance with their station in life from her husband. The

marital relation created this right, and it would have continued to exist so long as the relationship continued; and so, without reference to the will of the husband. There is no legal presumption that such relation would ever have been dissolved prior to the time when one of the parties thereto, in the ordinary course of events, would have died. The wrong of the appellant terminated the relationship, by causing the death of the husband prior to the time when, in the ordinary course of events, he would have died, and thereby deprived the wife of that pecuniary support and benefit which the law would have entitled her to from her husband so long as they remained husband and wife."

*Baltimore, etc., R. Co.* v. *State, for Use of Chambers*, 81 Md. 371 (32 Atl. 201). This was an action brought in the name of the State, as plaintiff, for the use of the widow and child of John W. Chambers, who was killed by what is alleged to have been the wrongful act, neglect, and fault of the defendant corporation. There was a verdict for the plaintiff and judgment thereon, from which the defendant has appealed. The court says:

" The appellant's sixth prayer contained a proposition which we think is not sustained either by reason or authority. It asks the court for instruction that if they find that the decedent had been separated from his family for a period of about 12 years immediately preceding his death, and that he had contributed nothing to the support of his wife or infant child during that period, that then the plaintiff was only entitled to nominal damages. In this we do not concur. The marital relation still continued to exist between the parties at the time of the death of the husband; and, whilst they had not, for the period stated, lived together as man and wife, her legal rights had suffered no change or impairment. It is very clear from the testimony in the record that the wife had not by her own wrong forfeited her right to a decent support from her husband in accordance with her station in life. The marital relation created this right, and it continued to exist in law to the death of the husband; and this, too, without reference to the will or wishes of the husband."

See, also, note to *Eichorn* v. *Railroad, etc., Co.* (La.), 3 Am. & Eng. Ann. Cas. 103.

It is the claim of the plaintiff that the question here is analogous to the one presented to this court in *Clinton* v. *Laning*, 61 Mich. 355 (28 N. W. 125), where a father brought action against the sellers of liquors to recover damages for loss, by being compelled to support an adult son given to drink, who became intoxicated at defendants' tavern and sustained injury. It was there held that contributions, whether voluntary or forced, may be included as an element of damages.

We are of opinion that the second question should be answered in favor of the plaintiff, and that the circuit judge should have permitted the case to go to the jury, under the proposed evidence, to determine as to the liability of defendant; and, if any was found, to assess damages, if any, for the contributions, voluntary or forced, that would probably have been made by deceased in favor of the widow during her probable life, if not exceeding the probable life of decedent, and for the child during its minority.

For the error pointed out, the judgment is reversed, and a new trial granted.

OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.