BOULINEAUX et al. v. CITY OF KNOXVILLE et al.

Eastern Section. Dec. 21, 1935.

Petition for Certiorari denied by Supreme Court, December 12, 1936.

Leon Jourolman, Jr., and R. E. Creekmore, both of Knoxville, for plaintiffs in error.

Frank Montgomery and J. C. Thomason, both of Knoxville, for defendants in error.

PORTRUM, J.  The declaration avers in part as follows:

". . . that the City of Knoxville was the owner of McGhee Tyson Municipal Airport, which was used for various airport purposes, including the sponsoring of exhibition flights and sight-see-

ing trips, and the carrying of passengers, including the making of contracts with pilots who would use said airport for such exhibition and airtrips.

"That the City of Knoxville leased said airport to the Knoxville Aerial Corporation, a corporation organized for the purpose of cultivating an interest in aeronautics, which corporation became the airport manager and supplied various services for the maintenance and management of said airport.

"That these parties about March 19, 1931, entered into an agreement with one Betty Lund Steele, under which she and certain associates should conduct certain commercial flights and sight seeing trips over the City of Knoxville, together with exhibition flights, including stunt flying, and that this was a joint adventure between the said defendants and the said Steele, under which the proceeds from the flight should be divided in a certain manner set out therein.

"That these defendants knew or should have known that the aircraft of the said Betty Lund Steele was not in airworthy condition, since the motor had been missing and was in a dangerous and defective condition, and in spite of this knowledge the joint adventurers initiated a series of exhibition flights, sight seeing trips, and the carrying of passengers for hire.

"That the plaintiff Boulineaux and the plaintiff's intestate, U. N. Forester, became passengers upon the aircraft of Betty Lund Steele on said date; that the aircraft being piloted at the time by said Betty Lund Steele, took off from the airport and flew a short distance, with the engine missing badly during this flight, and finally at a point approximately one-half a mile from the airport stalled, the plane falling into a deep gully, ditch, or ravine near the intersection of Kingston Pike and Foresthill Boulevard; that in the fall of said airplane the plaintiff Boulineaux was severely injured, and the plaintiff J. A. Forester's intestate, U. N. Forester, was killed."

These are two suits to recover damages for the injuries to the parties named above in the quotation from the declaration. The declaration made certain numbered specifications of negligence upon which the plaintiffs rely, and these specifications are summarized in the brief of the plaintiffs in error and we quote the summary in preference to a more detailed analysis of the declarations, both being the same with the exceptions of names and interests of parties.

"That the injuries to the plaintiff Boulineaux and the death of said U. N. Forester were caused by the negligence of the defendants, and that the proximate cause of these injuries were certain specific acts of negligence set out therein, to wit: that the aircraft in use was unairworthy, which defendants should have known;

that the defendants in their operation of said aircraft did not gain sufficient momentum for a takeoff from the earth; that the runway of the airport was in a dangerous and unsafe condition because of certain slippery clay laying upon it; that the defendants were in control of an aircraft, a dangerous instrumentality, and failed to exercise the prudence and care required of persons to whom dangerous instrumentalities are intrusted; that the defendants failed to operate said aircraft in an ordinarily prudent manner; that the aircraft was not equipped with emergency or safety belts; that said aircraft was equipped for stunt flying, carrying an auxiliary tank and a gravity fuel system, rendering same unsafe, improper and unfit for carrying passengers, to the knowledge of the defendants.''

The defendants, the City of Knoxville and the Knoxville Aerial Corporation, filed pleas of not guilty; the cases were heard together by the court and a jury and many days were consumed in the trial. At the conclusion of the introduction of all the proof, the defendants made a motion for a directed verdict, based, first, upon the case as a whole and then to each of the specifications of negligence named in the declaration. The court declined to direct a verdict and dismiss the suit, but it did sustain the motion to the extent of eliminating the specifications of negligence with the exception of two specifications, for the reason that there was no proof that these grounds of negligence contributed approximately to the injuries sustained, or to the cause of the accident. This action narrowed the issues to the two specifications left in the declaration, and which will be here set out:

''1. At the time and place aforesaid, the motor and engine of said aircraft was insufficient, out of repair, and defective, the said airplane as a consequence being unairworthy, all of which was known, or in the exercise of due care should have been known to the defendants, their agents and representatives aforesaid.

''4. That at the time and place aforesaid, the defendants, their agents and representatives were in control of an aircraft, a dangerous instrumentality, and failed to exercise such prudence and care as is required of such persons to whom such dangerous instrumentalities are intrusted.''

Upon these issues the cases were submitted to the jury, and it returned a verdict in favor of all of the defendants in each case. There is no assignment of error that there is no evidence to support this verdict of the jury, and it must be assumed by this court that the evidence warranted the verdict, the fact of which is that the defendants are not guilty of any acts charged in the declaration as submitted to the jury. This leaves open for review here only prejudicial errors committed by the trial judge in his charge to the jury, and in withdrawing certain allegations of neg-

ligence alleged in the declaration. There are some eighteen assignments of error covering many pages, and the pleaders have consolidated these assignments under seven heads designated as issues and in the form of a question. This record is voluminous and the court has decided that it can more expeditiously dispose of the case by the statement of the said questions and the answer of the court thereto. Nine assignments of error are included in the first question, which is:

"Issue 1. Are the defendants, under all the circumstances disclosed by this record, relieved from responsibility for the negligence of Betty Lund Steele in the operation of the aircraft?"

We answer this interrogatory in the negative, and state that the defendants were not relieved until the jury exonerated them. Since this is the principal question upon the appeal, we will treat it in more detail than the following questions.

It is insisted that the charge of the trial court exonerated the defendants from responsibility in any character for the negligence of Betty Lund Steele; the trial court did not assume the position he was charged with here, for his charge is as follows:

"If you should find that the sole, prime and proximate cause of said accident was the negligence of Betty Lund in the control, piloting, or handling of the airplane in question on its fatal flight, then your verdict would be for the defendants, but if the defendants were guilty of negligence in the respect charged herein which concurred with the negligence of Betty Lund in proximately causing the accident, then plaintiffs may recover if the facts otherwise warrant it."

The duty placed upon the defendants, especially the City of Knoxville, are stated in the charge by the trial judge after detailing the circumstances of the flight as follows: "Then the City of Knoxville owed an affirmative and continuous duty which it must have performed to make reasonable inspection to see that the airplane used by Betty Lund Steele was airworthy and reasonably safe for the carrying of passengers."

It is argued that this charge restricts the duty of the defendants to make inspections and relieves them of the duty incident to the continued supervision. We do not so interpret this language, for an affirmative and continuous inspection is sufficiently broad to cover a supervision of the operation of the machine. The trial judge so interpreted, and at other places in the charge stressed the continuous duty resting upon the defendants of protecting persons from danger arising from the surroundings, and of preventing injuries that might arise from the negligence of others so far as such danger or negligence could reasonably have been anticipated and reasonably guarded against. These are not the words of the charge, but is the principle announced, and this is the principle

upon which the defendants are liable, and the issue submitted to the jury. They are not liable, for the "sole, prime and proximate cause of said accident was the negligent act of Betty Lund in the control, etc.," since she did not occupy the position of servant or agent to the defendants. This relationship did not exist and the defendants' liability is based upon an affirmative act of negligence on its part, which, if guilty, would necessarily concur with the negligence of Betty Lund and render the defendants liable. We interpret this as the principle of liability which fastens upon the defendants as stated in the authorities reviewed in the able brief of counsel. There were two cases reviewed and one holds that the relationship of master and servant exists where dangerout instrumentalities were in use, and the other that a relationship of joint enterprise exists rendering the parties liable as partners. But the other well-considered and often-cited authority bases the liability upon the affirmative negligence of the defendants, except, perhaps in those cases where firearms are used and an innocent third party is injured. But even there the duty is to guard against and prevent the negligence of the operator of the concession, and in failing to do so the defendant is liable for the negligent act of the concessionaire. These authorities are entirely too numerous to attempt to review, and counsel's brief contains an elaborate review of the authorities and the court cannot improve upon it. Many of the authorities were reviewed in the Tennessee case of Hartman v. Tennessee State Fair Association, 134 Tenn., 149, 183 S. W., 733, Ann. Cas. 1917D, 931.

We agree with counsel's interpretation of the authorities, and that the city owed a duty to supervise the operation and detect and prevent the operative negligence, and if it fails to make a reasonable attempt to perform this duty or unless due precautions were not taken to guard against and prevent injuries that would arise from the negligence of the aviator so far as such dangers and negligence could reasonably have been anticipated and reasonably guarded against. This issue was placed squarely before the jury and the jury has exonerated the defendants from any affirmative acts of negligence. Therefore they are not guilty of the aviator's acts of negligence which could not have reasonably been foreseen and prevented. The charge of the court attempted only to draw this distinction, and the defendants were entitled to the distinction. The court answers the first inquiry in the negative.

The second and third inquiries raise the issue of the right of the trial judge to direct a verdict upon the grounds of negligence charged in the absence of safety belts in the aircraft, and the charge of negligence that the auxiliary gasoline tank rendered the machine unairworthy. The trial judge stated that there was no evidence that these alleged acts of negligence attributed prox-

imately or remotely to the cause of the injury. The ordinary flying machines are not equipped with belts, and they are used only in stunt flying when the machine turns over in the air and to prevent flyers from falling out of the machine, and this additional gasoline tank is placed on the machine to supply the engine with gasoline when it is being operated upside down. The court is unable to see how the presence of this tank or the absence of the belts could possibly have contributed to the plaintiff's injury. It is said that he may have been thrown out of the machine and received the head injuries upon the ground, and had he been attached to the machine he would not have come in contact with the ground. There is no proof that he was thrown out of the machine and received his injuries upon the ground, and the jury was not warranted in concluding that he received the injury in any way other than that supported by proof, or inferences to be drawn from the proof. There is no proof that it was the duty of the defendants to provide these belts or to see that they were provided when the machine was not engaged in stunting. There being no duty resting upon the parties to provide the belts, then the failure to provide them will not be a negligent act. The trial court correctly concluded that these acts of negligence should be withdrawn from the jury.

In reply to the fourth issue, the court states that the trial court did not err in charging the jury that they must determine the act of negligence that proximately caused the injury. This is not a case for the application of the doctrine of res ipsa loquitur, for it is a common and not an unusual occurrence for airplanes to stall and fall while in operation, and without the intervention of any act upon the part of the operator. Under such circumstances it was the duty of the plaintiff to point out the negligence upon which they attributed the proximate cause of the injury. The court explained to the jury that it could not speculate or guess, but must determine the negligent cause. This is an elementary rule.

The fifth question is: Did the plaintiffs assume the risk of the flight? They assumed only such risks as occurred without negligence on the part of the parties in control of the operation. The trial judge made this clear in his charge. The defendants are not insurers of the safety of the passengers, and are responsible only for their negligence.

Issue six. There was no error in the introduction of a certificate of airworthiness granted to Betty Lund Steele by the Department of Commerce of the United States. The examination of the certificate was but a part of the inspection of the qualifications of the machine and its operator, and this inspection was an issue in the case and the proof pertinent to the issue.

The seventh and last issue is: "Was any evidence intro-

duced requiring the court to charge the jury upon the effect of a sudden emergency or situation of peril upon the negligence of Betty Lund Steele?"

If so, it was not affirmative error in the failure to charge, since the charge would have tended to exonerate the operator of the machine, and if the operator was not negligent, it is difficult to see how the defendants could be held chargeable for their failure to foresee and prevent the negligent act.

The court has answered the seven questions asked, and we agree that the questions cover the substance of the assignments of error. We think the trial judge adopted the theory advanced by the plaintiffs and that the plaintiffs' great misfortune lay in the fact that the jury exonerated the defendants from acts of negligence. This court finds no reversible error in the record, and the judgments are affirmed, with costs.