REBENTISCH v. KORDA.

ASSAULT AND BATTERY—BURDEN OF PROOF—PROXIMATE CAUSE—
EVIDENCE.

> The mere fact that plaintiff woman, a divorcee, was in car with
> defendant, a married man, and was later found badly injured
> and unconscious in a ditch some 15 to 18 feet deep near road
> on which they had been riding after having spent an after-
> noon and ·evening drinking intoxicating liquor and driving
> around the city, did not make a question of fact for the jury
> in action for assault and battery, as to whether he was guilty
> of any act as a result of which she went out of the car into the
> ditch, as the doctrine of *res ipsa loquitur* is not adopted in
> this State, the plaintiff having the burden of proving that her
> injuries were the result of an assault and battery by the de-
> fendant.

Appeal from Kent; Brown (William B.), J. Sub-
mitted October 10, 1951. (Docket No. 77, Calendar
No. 45,259.) Decided December 3, 1951. Rehearing
denied January 7, 1952.

Case by Dorothy Rebentisch against Michael Kor-
da for damages sustained when she was allegedly
pushed from defendant's automobile. Verdict and
judgment for plaintiff. Defendant appeals. Re-
versed.

*Clem H. Block,* for plaintiff.

*Frank J. Powers,* for defendant.

BOYLES, J. Plaintiff sued the defendant to recover
damages for assault and battery. Her declaration
alleges:

---

REFERENCES FOR POINTS IN HEADNOTES

4 Am Jur, Assault and Battery § 148; 38 Am Jur, Negligence § 295.

"That on the early morning of January 3, 1950, the defendant threw the plaintiff into a ditch on Saranac road near M–21 in the vicinity of Ionia and left her there to die."

The defendant denied having molested her in any way, claimed that they both were drunk, and that he did not know how she got out of the automobile into the ditch. On jury trial plaintiff had a substantial verdict and judgment and the defendant appeals.

At the close of the testimony for plaintiff and again at the close of all testimony the defendant moved for a directed verdict on the ground that there was no proof that the defendant had assaulted or in any way harmed the plaintiff, beat her, or that he was liable for her injuries. The trial court reserved decision on the motions and after verdict for plaintiff the defendant moved for judgment *non obstante veredicto,* which was denied, and judgment entered on the verdict. The controlling question on the appeal is whether the court should have set aside the verdict and entered judgment for the defendant on the ground alleged.

The tale is a sordid one. Plaintiff was 37 years of age, divorced, with a 14-year-old daughter, and they lived with plaintiff's mother. Plaintiff worked at a place with a bar, where food and intoxicating liquors were sold. The defendant was a married man with 2 children. For several months before the alleged assault and battery these parties had been associating together in what is admitted to be a "vicious and immoral" relationship. Much of their time together was spent in taverns and bars, getting drunk and otherwise consorting together, taking various trips out of town, sleeping together at various places as husband and wife. Plaintiff's counsel claims she did not know that the defendant was a married man, but the plaintiff in her testimony admitted that she knew it on December 12, 1949, on

which day they left on a two-weeks' trip to New York and other places in the East where they stayed together. On December 27, 1949, they were arrested by the local Grand Rapids vice squad at her apartment for immorally living together and both pleaded guilty. After that occurrence the defendant went back to living with his family.

The time of the alleged assault is fixed as the night of January 3, 1950. Practically all of the defendant's testimony as to what occurred is not disputed. About noon, the defendant by prearrangement went to the home of plaintiff's mother and got the plaintiff. They went to a tavern, drank 3 or 4 whiskies, went back about 2 o'clock to get plaintiff's daughter, went south from Grand Rapids for a ride, drank beer in Middleville, went back to Grand Rapids to take the daughter to a show, then went to a tavern at Comstock Park near Grand Rapids where they stayed between 3 and 4 hours and drank whiskey during that time. They returned to Grand Rapids to pick up plaintiff's daughter, thence to a tavern about 8 p. m. where they had 2 or 3 whiskies. The daughter did not drink, they took her back to her grandmother's home about 9 o'clock and then started out again, about 9:30 or 10 o'clock. They drove around, and the defendant told plaintiff he wanted to call it quits, that he wanted to go back home to his family and forget the whole thing. Plaintiff was excited, threatened suicide, the defendant says she tried to jump out of the car going 50 miles an hour but was prevented by the defendant holding her around the neck. The plaintiff testified, however, that she did not at any time "try to jump from a moving automobile." Plaintiff asked the defendant to get a divorce and marry her but he said it wouldn't work. On the trip they drove around, first went west towards Coopersville, stopped at a tavern on the belt line about 15 miles *west* of Grand Rapids

where they stayed until closing time about 12:30 or 1 o'clock. From there they went southeast, then *south* on the belt line, driving almost to Cutlerville, 16 or 18 miles. She testified that he hit her on the jaw "on the belt line." This is the only testimony in the record which in any way tends to show that the defendant assaulted, beat or molested the plaintiff. He denies it happened. If it did, it was many miles distant from and some considerable time before the time and place where the plaintiff did leave the car and got into the ditch.

From the belt line near Grand Rapids they went *east* on dirt roads and wound up near Saranac and M–21 about 2 or 3 o'clock in the morning. Defendant claims that the plaintiff had climbed over and into the back seat. This she denies. But she did not testify at all as to the manner in which she left the car and got into the ditch. Her failure to so testify is claimed by her counsel to be because she was unconscious from the time she was hit on the jaw *while they were on the belt line*. The record does not support the claim. It is true that her power of speech was destroyed by her injuries in going into the ditch so that she had to testify by pointing to a chart. There is no question but that in some manner she got out of the automobile on a curve near Saranac into a ditch 15 or 18 feet deep and was seriously injured. The defendant, when asked how plaintiff got out of the car, testified:

"She was sitting in the front seat with me, and towards the last she got into the back seat, when she calmed down, she wasn't so excited, and I thought maybe she was going to go to sleep or maybe she was mad at me and she wanted to sit in the back seat. So, she went in the back seat of the car then.    *    *    *

"*Q.* Do you know how she got out of the car?

"*A.* I don't know exactly, if she opened the door or the door opened, but I was driving along and the first thing I knew she was out before I had a chance to stop. It was dark and I did stop the car and tried to find her, looked back, walked back a little ways, and I couldn't see her, so I don't know I must have got mixed up drinking and all that stuff. I started to drive away and I got a little ways down the grade, and I decided to stop again thinking she will come back in a little while, see. And when I stopped there, I must have fell asleep because the first thing I knew it was daylight when I woke up. I was drunk and so was she."

On cross-examination, he testified:

"*Q.* And you say she jumped out of the back seat?
"*A.* I don't know if she jumped or fell out or how it happened. I was driving and the first thing I knew she was out and the door open, and when I slowed the car down, it was dark, and quite a distance I stopped the car and I looked around and couldn't see her anywheres."

When he woke up in the morning his car was out of gas and he hunted up a friend in Saranac to borrow money to get gas. He heard some boys talking about a woman being found in a ditch, thought it would be the plaintiff, went to see Hudson Meyers, who he knew was an officer, and told him about being out with a woman and about her being missing. The officer suggested they go to the sheriff's office in Ionia and they did so. There the defendant told the sheriff the same facts he later testified to at the trial. A charge of drunk driving was placed against him to hold him for investigation. Later the charge was dismissed and defendant released.

There is no doubt but that the plaintiff did in some manner get out of the automobile and land in a ditch 15 or 18 feet deep. It had no water in it, but there was mud and stones. When found the next morning

after daybreak, she was unconscious, seriously injured, her face, neck, arms and legs scratched and bruised, both shoes off (one was found about 10 feet away). She was hospitalized, very seriously and permanently injured. If there were any testimony at all as to whether plaintiff jumped from the car at that place, was thrown or pushed, or fell out accidentally, there might have been a question of fact to be submitted to the jury as to whether the defendant had assaulted her or pushed her out, which then would bring up a question for the jury as to the credibility of the defendant's testimony. But the mere fact that plaintiff was in the automobile with the defendant, and later found in the ditch, badly injured, does not make a question of fact for the jury as to whether the defendant was guilty of any act as a result of which she went out of the car into the ditch. The doctrine of *res ipsa loquitur* is not adopted in this State and plaintiff had the burden of proving that her injuries were the result of an assault and battery by the defendant. The record does not support that claim.

While the plaintiff did testify at some length as to her relationship with the defendant, admitted that she was in love with him, and that on December 12th, when they went to New York together, she knew that he was married, she did not testify that she was thrown or pushed from the automobile, or that the defendant assaulted or even touched her at that time and place. In the complete absence of any such testimony in the record, we are constrained to hold that there was no question of fact to go to the jury as to the defendant's liability for an alleged assault and battery, and defendant's motion for judgment notwithstanding the verdict should have been granted.

Reversed for entry of judgment of no cause for action.

REID, C. J., and NORTH, DETHMERS, CARR, BUSH-NELL, and SHARPE, JJ., concurred. BUTZEL, J., did not sit.