IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 7, 2011 Session

## TENNESSEE RAND, INC. v. AUTOMATION INDUSTRIAL GROUP, LLC, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 05-0203     W. Frank Brown, III, Chancellor**

---

**No. E2011-00280-COA-R3-CV-FILED-JANUARY 12, 2012**

---

The first time this case was before us, *see Tennessee Rand, Inc. v. Automation Industrial Group, LLC*, No. E2009-00116-COA-R3-CV, 2010 WL 3852317 (Tenn. Ct. App. E.S., filed Sept. 29, 2010) ("*Rand I*"), we reversed that portion of the trial court's judgment decreeing that Automation Industrial Group, LLC ("Automation") was not entitled to recover on its counterclaim due to its fraud and we reinstated the trial court's earlier judgment awarding Automation $2,270,759.22 plus prejudgment interest of $256,705.19. The trial court had entered its earlier judgment against Tennessee Rand, Inc. ("Rand") on Automation's counterclaim, and then set it aside on Rand's motion to alter or amend. Although the parties had not addressed in the first appeal the prejudgment interest portion of the trial court's earlier judgment, we, without extended discussion, reinstated the prejudgment interest as originally calculated by the trial court. What the parties did not put at issue or otherwise stress in the first appeal was the fact that Rand had challenged, in its motion to alter or amend, the accuracy of the trial court's calculation of prejudgment interest. In that motion, Rand had argued that the trial court had obviously miscalculated prejudgment interest. In *Rand I*, we also reversed an award of discretionary costs to Rand because we concluded that Automation was the new prevailing party. Upon remand following our decision in *Rand I*, Rand asked the trial court to correct the miscalculation of prejudgment interest. Rand also asked the court to start the accrual of post-judgment interest from the date of entry of the trial court's judgment on remand. Automation filed a motion for discretionary costs as the new prevailing party. The trial court on remand determined that it had miscalculated prejudgment interest but held that our opinion in *Rand I* prevented it from granting Rand any relief with respect to the miscalculation as well as with respect to the other relief requested by Rand. The trial court also denied Automation's motion for discretionary costs, based, at least in part, on Automation's substantial windfall award of prejudgment interest due to the

1

miscalculation. Rand now appeals the denial of its motions, and Automation challenges the denial of its request for discretionary costs. Automation also asks us to determine an issue pertaining to interest on the unpaid portion[1] of the judgment entered on remand. We conclude that, in the interest of justice, we must take corrective action pursuant to Tenn. R. App. P. 36 by granting Rand relief from the miscalculation of prejudgment interest. Since the erroneous and inflated award of prejudgment interest was one of the reasons given by the trial court for denying discretionary costs, we vacate that denial and remand for further consideration of Automation's request. We affirm that part of the judgment, as modified by us, holding that Automation is entitled to post-judgment interest from the date of entry of the original judgment in its favor. Rand obtained a stay of collection of Automation's judgment pending appeal upon posting a bond to cover interest accrued between the original judgment date and the date of the judgment on remand. The amount set by the trial court to obtain a stay did not include interest accrued on the unpaid portion of the judgment. We hold that Automation is entitled to recover post-judgment interest accrued on the judgment. Accordingly, the trial court's judgment is vacated in part and modified in part. As vacated and modified, the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part; Modified in Part; and Affirmed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Richard W. Bethea and Tom Greenholtz, Chattanooga, Tennessee, for the appellant, Tennessee Rand, Inc.

Gary R. Patrick, R. Jonathan Guthrie, and McKinley S. Lundy, Jr., Chattanooga, Tennessee, for the appellee, Automation Industrial Group, LLC.

**OPINION**

I.

The posture of this "complicated business divorce case" as it came to us in *Rand I* was that the parties spent 25 days trying the case after which the trial court entered a judgment in the amount of $2,270,759.22 plus prejudgment interest on August 29, 2008 ("the August 2008 judgment") in favor of Automation and against Rand. As a part of the same

---

[1]Following the entry of the judgment on remand, Rand made a substantial payment on the judgment to Automation.

judgment, the court decreed that Rand was entitled to a judgment against Automation in the amount of $662,818.80. On December 18, 2008, the trial court entered a new judgment ("the December 2008 judgment") – prompted by Rand's motion to alter or amend – in which judgment it reversed the August 2008 judgment entered in favor of Automation. The central issue in **Rand I** was whether the trial court had erred in setting aside the earlier judgment in favor of Automation. Other issues included whether the evidence preponderated in favor of a larger judgment for Automation, the validity and amount of the judgment in favor of Rand, and the award of discretionary costs to Rand. We held, in our opinion filed September 29, 2010 ("the September 2010 judgment"), that the trial court erred in setting aside the August 2008 judgment in favor of Automation, but that the evidence did not preponderate against the amount awarded to Automation in that judgment. Therefore, we reinstated that part of the judgment awarding Automation a recovery against Rand. Our exact language is as follows:

> We believe the trial court chose a logical route through a confusing situation. We hold that the evidence does not preponderate against the finding that Rand owes Automation $2,270,759.22.
>
> Although neither party has asked us to deal with the trial court's award of prejudgment interest on Automation's counterclaim, we will address it briefly. The court calculated interest from the date the claim was made. Its award is based on a rate of 5% on [$552,853.79] and a rate of 1.25% on the remainder. The award is certainly within the reasonable bounds of discretion. Consistent with our handling of Automation's claim, we reinstate this award of prejudgment interest.

**Rand I** at 19-20 (footnote added).

The miscalculation in prejudgment interest made by the trial court in the August 2008 judgment is fairly obvious upon a close review of the trial court's explanation of the prejudgment interest award in that judgment:

> With regard to [Automation's] account receivable claim, the court awards 5% interest on $552,853.79 from April 25, 2005, until the entry of this judgment. Prejudgment interest for three years, four months and four days is $184,890.46.[2]

---

[2]The prejudgment interest, *i.e.*, $184,890.46, on the $552,853.79 portion of the judgment, is the only portion of the prejudgment interest award at issue in this case. The remainder of the prejudgment interest is not now and never has been at issue.

3

By using round numbers, it becomes clear that the trial court's numeric calculation actually almost *doubled* its *intended* award of prejudgment interest. A principal amount of $500,000 at a rate of 10% would yield $50,000 per year and $150,000 in three years. The lesser rate of 5% – the rate the trial court said it was using – would yield only $75,000 for 3 years. Rand has calculated the amount of prejudgment interest on the $552,853.79 portion of the judgment, using exact figures, to be $92,571.87. While disagreeing with Rand's position that the trial court has the authority to correct this error, Automation does not challenge the mathematical accuracy of Rand's calculation.

It is important to remember that Rand, in its motion to alter or amend that resulted in the December 2008 judgment, had specifically challenged the amount of prejudgment interest on the $552,853.79 as an erroneous calculation. The December 2008 judgment of the trial court had the effect of pretermitting any issue as to the amount of prejudgment interest on the award in August 2008. This is because the judgment upon which the prejudgment interest had been calculated was set aside in its entirety. Given that the issue was effectively pretermitted by the trial court's reversal, it was not argued on the merits before this Court in *Rand I*. We simply adopted the trial court's numbers in our opinion and, in doing so, repeated the trial court's simple and honest mathematical mistake.

The trial court's ruling on remand was as follows:

> [T]he Court notes that . . . Rand is correct that this Court inadvertently miscalculated the amount of prejudgment interest to be awarded on the portion of the judgment representing the $552,853.79 in held invoices. The Court finds that this mathematical error would reduce the award of prejudgment interest [to $92,571.87].[3] Nevertheless, *this Court does not have the authority to modify the judgment that the Tennessee Court of Appeals affirmed as modified and reinstated*.

(Footnote and emphasis added.)

---

[3] We have used the preposition "to" instead of the word "by" used by the trial court to correct what we believe was simply a misstatement. Rand's assertion that the correct amount of prejudgment interest on the $552,853.79 portion of the judgment is $92,571.87 is not challenged by Automation as to the amount. Thus, we believe the court intended to say that the prejudgment interest is reduced "by $92,318.59" which represents the difference between $184,890.46 and $92,571.87.

As we have indicated, Rand asked the trial court to hold that post-judgment interest on Automation's judgment against Rand did not begin to run until the trial court entered an order setting the exact amount of the judgment *on remand*. That judgment was entered on January 28, 2011 ("the January 2011 judgment"). Rand specifically argued that post-judgment interest should *not* run from the date of the August 2008 judgment. The trial court found as follows:

> The Court finds that the amount of Automation's judgment as modified and reinstated by the Tennessee Court of Appeals as of August 29, 2008 is $2,342,746.00[4] . . . . Rand is not entitled to any further adjustments to Automation's judgment of $2,342,746.00 as of August 29, 2008. The Court further finds that Automation is entitled to post-judgment interest at the statutory rate of ten percent (10%) on Automation's judgment against . . . Rand in the amount of $2,342,746.00 from August 29, 2008 to present. The court determines that the amount of post-judgment interest on Automation's judgment against . . . Rand from August 29, 2008 through January 28, 2011 is $566,163.61. The amount of Automation's judgment . . . plus post-judgment interest as of January 28, 2011 is $2,908,909.61.

(Footnote added.) As can be seen, the trial court "rolled" the post-judgment interest into the judgment of January 28, 2011, making that judgment total $2,908,909.61.

Moving forward, we will be discussing four critical judgment dates. To assist the reader, we restate those judgments and their significance:

| | |
|---|---|
| August 2008 | First judgment of the trial court awarding Automation a judgment in excess of $2.5 million, including prejudgment interest. |
| December 2008 | Trial court's judgment reversing award to Automation. |
| September 2010 | Court of Appeals judgment. |
| January 2011 | Trial court judgment on remand. |

---

[4]We are not sure how the trial court arrived at this figure, but since the amount is not challenged on this appeal, we assume it is correct.

As we have previously stated, Automation filed a motion for discretionary costs based upon our determination in **_Rand I_** that Automation was the new prevailing party. Automation sought court reporter charges of $17,971.85 and expert witness fees of $1,600 for a total of $19,571.85. Rand opposed the motion arguing that Automation lost as much or more than it won and therefore its position as "prevailing party" was tenuous and entitled to "little weight" on the subject of discretionary costs. Rand specifically challenged $5,946.09 of the request as not being allowable under Tenn. R. Civ. P. 54.

The trial court denied in toto Automation's request for discretionary costs. The denial was based upon

> equitable reasons, including the Court's decision that the Court cannot alter the amount of the (excessive per opinion) prejudgment interest award to Automation.

Upon the entry of the January 2011 judgment, Rand appears to have paid Automation the sum of $2,250,423.60. Rand arrived at this amount by subtracting from the January 2011 judgment (1) the challenged prejudgment interest, and (2) the post-judgment interest accrued between the August 2008 judgment and the January 2011 judgment. Rand then filed a motion to stay efforts by Automation to collect any part of the judgment that remained unsatisfied. The trial court granted Rand's motion and prohibited Automation from attempting to "execute upon the January 28, 2011 judgment or otherwise issue post-judgment discovery in aid of execution." The court further ordered that

> Rand may obtain a full stay of execution of the judgment pending appeal upon payment into Court of $663,125.07 . . . ; the Court calculates this amount as the sum of (1) $92,344.25 not already paid by . . . Rand on the January 28, 2011 judgment; (2) an additional six-months of statutory interest on this unpaid amount in the amount of $4,617.21; and (3) statutory interest running from August 29, 2008 through January 28, 2011 in the amount of $566,163.61. . . .
>
> . . . Rand may alternatively obtain a full stay of execution of the judgment pending appeal by obtaining an irrevocable letter of credit, with Automation . . . as beneficiary . . . .

Rand supplied the letter of credit and thereby stayed collection of any unpaid portion of the judgment. It is Rand's position that payment of the unchallenged portion, *i.e.*,

$2,250.423.60,[5] of the principal amount of the January 2011 judgment, prevented the running of any additional interest.  It is Automation's position that any portion of the judgment that remained unpaid as of January 28, 2011, whether it is principal, or interest, or some combination of each, accrues interest from that date at the 10% statutory rate until the date it is paid.

II.

Rand raises two issues on appeal which we repeat verbatim:

> Whether, upon remand of this case . . ., the chancery court possessed authority to correct an undisputed mathematical error in the calculation of the judgment, or, alternatively, whether this Court may act to correct an undisputed mathematical error in the calculation of the judgment.

> Whether, upon remand of this case . . . for further proceedings to determine judgment, the chancery court improperly held that post-judgment interest began running from a previous judgment rather than upon entry of the final judgment.

Automation raises the following issues which we also have quoted verbatim:

> Whether Automation is entitled to recover post-judgment interest on all amounts of the trial court's final post-remand Judgment that Rand has not paid.

> Whether the trial court erred by failing to award Automation its discretionary costs after this Court determined that Automation was the new prevailing party.

III.

With the exception of the trial court's ruling on discretionary costs, all the issues raised by the parties present questions of law.  A trial court's conclusions of law are reviewed

---

[5]This figure comes from Rand. The true figure of the unchallenged portion appears to be $2,250,427.41, *i.e.*, the face amount of the judgment of $2,342,746 found by the trial court in the January 2011 judgment reduced by $92,318.59, which appears to be the amount of the prejudgment interest miscalculation.

*de novo* with no presumption of correctness*. Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999).

By the express terms of Tenn. R. Civ. P. 54.04, discretionary costs are "allowable only in the [trial] court's discretion." Therefore, we will not "alter a trial court's ruling [on discretionary costs] absent a clear abuse of discretion." *Trinity Industries v. McKinnon Bridge Co.*, 77 S.W.3d 159, 180 (Tenn. Ct. App. 2001); *see*, *Owens v. Owens*, 241 S.W.3d 478, 497 (Tenn. Ct. App. 2007). Failure to follow the controlling legal standards to the prejudice of one of the parties can constitute an abuse of discretion. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

IV.

A.

The most logical starting place is with the obvious miscalculation of prejudgment interest. Noticeably absent from Automation's brief is any affirmative statement that the trial court's initial calculation of prejudgment interest is correct or that Rand's calculation is mathematically incorrect. Thus, we are convinced that our opinion in *Rand I* reinstated an award of prejudgment interest that was mistakenly overstated by $92,318.59. Instead of challenging Rand's calculation, Automation concentrates on convincing us that (1) our opinion in *Rand I* settled the matter and left no room for the trial court to correct us and (2) that judicial economy and finality should steer us away from any correction of the miscalculated interest.

We do not need to spend much time on Rand's argument that the trial court erred in not correcting on remand the amount of prejudgment interest. Rand's argument is based primarily on language in the mandate remanding the case "for further proceedings and final determination therein." However, our September 2010 judgment expressly addressed the matter of prejudgment interest, stating "[t]hat part of the [August] judgment of the trial court awarding Automation judgment against Rand in the amount of $2,270,759.22 plus prejudgment interest in the amount of $256,705.19 is reinstated and, as such, is affirmed." The $256,705.19 award included the $184,890.46 award that we reinstated on one particular portion of the claim, *i.e.*, $552,853.79. We regard to any proceedings on remand, we ordered that they be "consistent with this opinion." The mandate has no independent life of its own; it is simply a form used by the clerk to transmit to another court the operative documents, such as, in this case, our opinion and judgment. Tenn. R. App. P. 42. Therefore, the mandate cannot operate to nullify the express language in our opinion and the September 2010 judgment. Further, it is axiomatic that "inferior courts must abide the orders, decrees and precedents of higher courts." *Weston v. State*, 60 S.W.3d 57, 59 (Tenn. 2001). Therefore,

8

the trial court did not err in finding that the September 2010 judgment by us prevented it from correcting the miscalculated interest.

The determination that the trial court did not err does not end the matter. Rand argues that we can and should correct the erroneous calculation pursuant to Tenn. R. App. P. 36(a). That rule provides that we "shall grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires . . . including the giving of any judgment and making of any order . . . ." *Id*. We have previously noted Automation's argument that concerns of finality and judicial economy should persuade us to deny relief. We are not convinced. Rand raised the miscalculation issue in its motion to alter or amend the August 2008 judgment. The December 2008 judgment had the effect of pretermitting the calculation issue. We cannot blame Rand for not throwing this issue into the mix in *Rand I* since the judgment upon which the interest had been calculated had been reduced by the trial court to zero. Thus, the issue was never heard on the merits until it was presented to the trial court on remand. The trial court determined that it had indeed miscalculated the amount of prejudgment interest but noted that it was without authority to correct the error. We are the first court to hear the issue on the merits *with the authority and ability to grant relief*. We hold that Rand is entitled to have the award of prejudgment interest on the $552,853.79 portion of the judgment reduced to $92,571.87. This represents a reduction in the $184,890.46 award by $92,318.59. Accordingly, pursuant to Tenn. R. App. P. 36(a), we modify the January 2011 judgment to reflect a reduction of $92,318.59.

B.

The next issue is whether the trial court erred in allowing post-judgment interest from the date of entry of the August 2008 judgment. Rand argues that interest should not begin to accrue on the judgment until the date of entry of the January 2011 judgment on remand, or, alternatively, from the December 2008 judgment at the very earliest. We are dealing here with the interplay of a statute and a court rule. Interest on judgments is allowed by Tenn. Code Ann. § 47-14-122 (2001), which states:

> Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for new trial.

Interest after an appeal is addressed by Tenn. R. App. P. 41, which states:

> If a judgment for money in a civil case is affirmed or the appeal is dismissed, whatever interest is allowed by law shall be payable computed from the date of the verdict of the jury or the

9

equivalent determination by the court in a non-jury case, which date shall be set forth in the judgment entered in the trial court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the trial court, the mandate shall contain instructions with respect to allowance of interest.

We have addressed the issue of the accrual date of post-judgment interest in several cases, including *Inman v. Inman*, 840 S.W.2d 927 (Tenn. Ct. App. 1992). *Inman* involved a divorce that was modified on appeal by this Court and the Supreme Court, the ultimate result of which was to award wife considerably more assets. On remand, she sought interest on the judgment, as modified, from the date of entry of the trial court's original judgment. We stated:

> The principal issues in this appeal are the effective date of an appellate modification of a Trial Court judgment and the jurisdiction of the Trial Court to enforce the judgment as modified by the appellate courts. There is a dearth of published authority on this subject. It is arguable that the effective date of such a modification is the date of filing the appellate opinion, or of the entry of the judgment of the appellate court, or of the issuance of the mandate of the appellate court or of the entry of the mandate upon the minutes of the Trial Court. This Court does not subscribe to any of the foregoing, but adopts the statement of the Louisiana Supreme Court in *Swift & Co. v. Leon Cahn & Co.*, 151 La. 837, 92 So. 355 (1922) as follows:
>
>> The judgment on appeal, when recorded in the Appellate Court, stands in the place of the judgment of the Trial Court, and the legal situation is as if the judgment so recorded had been originally rendered by the Trial Court.
>
> Application of this principle to the present controversy produces an orderly and just result.

*Id.* at 932.

*Inman* involved a modification on appeal increasing the original award, but *Inman v. Alexander*, 871 S.W.2d 153 (Tenn. Ct. App. 1993), involved a modification decreasing the amount of the trial court's judgment by $50,000. Nevertheless the rule established in

*Inman* of allowing interest from the date of the original judgment held true in *Alexander* as well. Referring to the last sentence in Tenn. R. App. P. 41, the *Alexander* opinion stated:

> This provision has been the source of some confusion in the state and federal courts. But, in *Inman v. Inman*, 840 S.W.2d 927, 932 (Tenn. App. 1992), this court solved one part of the puzzle by holding that Rule 41 did not affect the statutory post-judgment interest provided in Tenn. Code Ann. § 47–14–121. Thus, when a judgment is rendered in the trial court originally or by direction from the appellate courts, *the statute provides that the judgment shall automatically accrue interest* at the statutory rate unless the court specifies that "its action requires that interest be computed other than as required by statute." *Inman*, 840 S.W.2d at 932.
>
> The opinion remanding the case directed the entry of a judgment in the lower court for $100,000 as of the date of the original judgment and provided that pre-judgment interest should be paid from the date of the original breach to that time. In our opinion nothing more was required to put into effect the accrual of post-judgment interest from the date of the original judgment until the judgment is finally paid.

*Id*. at 153-54 (emphasis added).

In *Wade v. Wade*, 897 S.W.2d 702 (Tenn. Ct. App. 1994), husband argued in a divorce case that certain payments he had made to wife while the case was pending should relieve him of paying interest on her alimony award. *Id*. at 720. We held that despite modification of the award on appeal, wife was "entitled to interest at the statutory rate on the assets awarded to her from the date of the original divorce decree":

> Furthermore, it is the rule in Tennessee that "when a judgment is rendered in the trial court originally or by direction from the appellate courts, the statute [Tenn. Code Ann. Sec. 47–14–121] provides that the judgment shall automatically accrue interest at the statutory rate unless the court specifies that 'its action requires that interest be computed other than as required by statute.' " *Inman v. Alexander*, 871 S.W.2d 153, 154 (Tenn. App. 1993). This court has further held that the "judgment on appeal, when recorded in the Appellate Court, *stands in the*

11

*place of the judgment of the Trial Court, and the legal situation is as if the judgment so recorded had been originally rendered by the Trial Court.*" **Inman v. Inman**, 840 S.W.2d 927, 932 (Tenn.App.1992). Therefore, Wife is entitled to the statutory interest on the trial court's judgment as modified by this opinion.

*Id*. at *720 (emphasis added; brackets in original).

Rand pays lip service to the rule established in the above cases, but argues that a different rule applies when the case is remanded for further proceedings. Rand relies on **Watson v. Watson**, 309 S.W.3d 483 (Tenn. Ct. App. 2009) and **Bunch v. Bunch**, No. 03A01–9805–GS–00156, 1999 WL 172674 (Tenn. Ct. App. E.S., filed Mar. 24, 1999), for this distinction. **Watson** discusses **Bunch** in the course of articulating a distinction from **Wade**, **Alexander** and **Inman**:

> The **Bunch** Court, however, distinguished the cases on which the wife relied. It noted that, in those cases, "the appellate court *modified* the lower court's judgment, i.e., changed specific monetary awards therein." **Bunch**, 1999 WL 172674, at *4. In **Bunch**, however, after determining that one of the marital assets was undervalued, the appellate court had remanded the case to allow the trial court to determine the proper distribution. **Id**. Therefore, the **Bunch** Court held that "the date on which the trial court entered judgment after reapportioning the parties' marital assets upon remand . . . is the date upon which it 'returned the verdict' for purposes of [Tennessee Code Annotated] § 47–14–122." **Id**. at *5. Accordingly, the appellate court held that the wife was entitled to interest from the date of the judgment on remand, not the date of the original judgment. **Id**.

> In the present case, as in **Bunch**, this Court did not modify the judgment of the trial court. Rather, it remanded the case to the trial court for a reconsideration of the distribution of the marital estate after determining that one of the marital assets was undervalued. *See* **Watson**, 2005 WL 1882413, at *10. Because this Court remanded the case to allow the trial court to make its own decision regarding the distribution, the date of the judgment on remand, not the date of the original divorce decree, is the

> date on which the trial court "returned the verdict" for the purposes of Section 47–14–122. *See Bunch*, 1999 WL 172674, at \*5. Therefore, post-judgment interest on the additional $13,000 awarded to Wife as her share of the marital estate began to accrue from November 6, 2007, which was the date of the judgment on remand. On remand, the trial court is directed to award post-judgment interest on the additional $13,000 from November 6, 2007, the date of the judgment on the previous remand.

*Id*. at 502 (emphasis in *Bunch*).

We have no disagreement with the distinction articulated in *Watson* and *Bunch*. We do, however, have a problem with expanding it to cover the present case. We note that Rand's restatement of the distinction, to include any case "remanded for further proceedings," is overly broad. In *Inman*, the case was "remanded to the [trial court] for further proceedings not inconsistent with this opinion." 840 S.W.2d at 930. As we have shown above, *Inman*, allowed post-judgment interest from the date of the original judgment. *Watson* and *Bunch* do not apply when the remand leaves nothing of substance to be done by the trial court to determine the amount of the judgment. Our opinion left nothing of substance to be done by the trial court with regard to the monetary award against Rand. We reinstated the August 2008 judgment and then affirmed it. Our opinion and judgment stand as if the August 2008 judgment had never been disturbed.

Rand argues, alternatively, that post-judgment interest should not begin to run any earlier than the date of entry of the December 2008 judgment. Rand relies on *Monday v. Millsaps*, 271 S.W.2d 857 (Tenn. 1954). *Monday* held that under a previous version of the post-judgment interest statute, interest did not begin to run until "the date judgment was entered after overruling the motion for a new trial." *Id*. at 858. The "*Monday* rule" was a judicial construction of the statute in effect at that time which stated: "Interest shall be computed on every judgment from the day on which it was entered of record." *Capital Airlines, Inc. v. Barger*, 341 S.W.2d 579, 588 (Tenn. Ct. App. 1960) (*quoting* Tenn. Code Ann § 47-1610 and explaining that *Monday* was a judicial construction of that statute). The current version dates back to 1979 and expressly states that the computation shall be made "without regard to a motion for a new trial." Tenn. Code Ann. § 47-14-122. The change in the statutory language has been noted by at least one legal scholar and described as having "set aside" the holding of *Monday*. Sobieski, *The Procedural Details of the Proposed Tennessee Rules of Appellate Procedure*, 46 Tenn. L. Rev. 1, 99 n.540 (1978). In the present case, we see no reason to treat a motion to alter or amend any different than a motion for new trial. Accordingly, we decline to follow the holding in *Monday*.

13

Rand also argues that Automation is guilty of delay with respect to some portion of the delay during the appellate process and therefore should lose the right to collect post-judgment interest for those periods. Rand blames Automation for an additional 45 days that it requested to file its brief and for an unspecified number-of-days delay in having a useable record filed with us. Rand relies on **Staggs v. National Health Corporation**, 924 S.W.2d 79 (Tenn. 1996), for the proposition that we can deduct the interest on these periods of delay to prevent Automation from being unjustly enriched. **Staggs** recognized that "the legislature did not intend for a party . . . to be unjustly enriched through the payment of post-judgment interest." **Id** at 81. However, the situation in **Staggs** is very different than the present case. The plaintiff employee in **Staggs** was asking for interest on that part of a judgment that ordered an employer in a worker's compensation case to reimburse a third party health insurer for medical benefits provided to the employee. **Id**. The Court did not allow it. We are not aware of any cases that have applied **Staggs** outside the narrow realm of worker's compensation. We are not persuaded that we should let the quoted language from **Staggs** lead us away from the well-recognized rule that the right to post-judgment interest is controlled by statute and that the courts are not free to ignore that right. **State v. Thompson**, 197 S.W.3d 685, 693 (Tenn. 2006); **Bedwell v. Bedwell**, 774 S.W.2d 953, 956 (Tenn. Ct. App. 1989). Moreover, Automation points out that Rand's argument does not explain how Automation has power over the court clerk and does not explain how the delay in filing the record should be blamed on Automation for anything other than failing to make the clerk of the trial court "work faster." Rand fails to even contest Automation's point in its lengthy reply brief. We decline to suspend post-judgment interest for any alleged periods of delay in **Rand I**.

Before moving to the calculation of post-judgment interest in this case, we must first discuss the effect of our decision to eliminate $92,318.59 of the prejudgment interest awarded to Automation. In the January 2011 judgment, the trial court stated that "the amount of Automation's judgment as modified and reinstated by the . . . Court of Appeals as of August 29, 2008 [was] $2,342,746." That figure includes prejudgment interest that we have now held was inflated by $92,318.59. Thus the new judgment figure is determined as follows:

$$\begin{array}{r} \$2,342,746.00 \\ \underline{<92,318.59>} \\ \$2,250,427.41 \end{array}$$

Because of this adjustment – and through no fault of the trial court – the *post-judgment* interest figure calculated by the trial court, *i.e.*, $566,163.61, is no longer correct. Using the 10% statutory per annum interest rate, the per diem interest on Automation's modified judgment is $616.56. There are 882 days from August 29, 2008, the effective date of that

judgment, to January 28, 2011, the date of the January 2011 judgment of the trial court. This means that the new post-judgment interest as of January 28, 2011, is $543,805.92 and we modify the January 2011 judgment of the trial court to reflect this new figure for post-judgment interest for the relevant time period.

C.

We must now consider the issue of whether Automation is entitled to recover statutory post-judgment interest on the accrued interest awarded in the January 2011 judgment, as modified by us. We agree with Automation that ***Long v. Mattingly***, 817 S.W.2d 325 (Tenn. Ct. App. 1991) is directly on point and requires that Automation be allowed to recover interest on the interest awarded in the January 2011 judgment, as we have modified it.

In order to provide some focus, we will reiterate our understanding of the pertinent facts and respective arguments on this point. The January 2011 judgment determined the exact dollar amount Rand owed to Automation, including prejudgment interest *and* post-judgment interest from August 29, 2008 to January 28, 2011. Rand paid Automation $2,250,423.60[6] on January 28, 2011. The trial court held that Rand could secure a stay of execution by presenting Automation a letter of credit in the amount of $663,125.07, which represented the unpaid portion of the judgment without regard to any interest that accrued *after* January 28, 2011.

Rand argues that the trial court has ruled on the matter in its order allowing a stay of execution and that it has acted well within its authority to apportion partial payments on a judgment according to the equities of the case as allowed by ***Mason v. Smith***, 79 Tenn. 67 (1883). We are not convinced that ***Mason*** helps Rand. One of the issues in ***Mason*** was how to apply a payment made before the judgment was rendered. ***Id***. at 74. ***Mason*** states

> The money was realized, and paid into court before the trial of the cause in the circuit court, and applied by the court after the rendition of the judgment. Treated as a payment either upon the debt or the judgment, there was no application of the payment by any of the parties. The application must therefore be made by the law. No objection is taken to the ruling of the circuit judge that so much of the fund as was necessary should be applied to the payment of the costs of the cause. The general

---

[6]In its reply brief, Rand indicates, in one place, that it made a payment on the judgment in the amount of $2,250,401.75. It also alludes to the figure of $2,250,423.60. We believe the latter figure is the correct one because it is closer to the figure arrived at by us in Section III (B) of this opinion.

rule in the application of payments by law is that a partial payment shall first be applied to the discharge of interest due, and the balance in discharge of principal: ***Jones v. Ward***, 10 Yer., 161. Another rule on the subject adopted in this State is that the law will apply a payment according to the intrinsic justice and equity of the case: ***Bussey v. Gant***, 10 Hum., 238. Taking these two rules together, the money should be applied to the interest by way of damages which is given by law upon the amount of the justice's judgment.

As we read ***Mason***, the ultimate result was the application of the payments first to interest, which amounted to damages by the surety, and then to principal. We should also note that we are not entirely convinced that the trial court's order allowing a stay of collection efforts was meant to be its final say with regard to the amount owed on the judgment. If the trial court had intended it as the final word, it is unlikely it would have given the parties, as it did, the option of allowing them to ask for "reconsideration of this Order at any time should circumstances warrant such reconsideration." We acknowledge that, if the order staying collection was not intended to determine the exact and final amount owed by Rand, we are at risk of supplying an advisory opinion. To the extent our consideration of this issue could be viewed as advisory, we have no doubt any guidance we furnish will be helpful on remand.

Automation argues that ***Mattingly*** is directly on point. Automation also argues that we should adopt the "American Rule," followed in the majority of jurisdictions of applying any partial payment first to interest and then to principal. As we have agreed with Automation on the first point, we will not reach the issue of adopting blanket rules from outside this jurisdiction. ***Mattingly***, like the present case, involved two appeals of the same case. In the first trial and appeal, the husband and wife plaintiffs secured combined judgments totaling $125,000 which were remitted, under protest, by the trial court to $105,000 and then reduced by this court to $60,000. ***Id***. at 326. While an application for permission to appeal to the Supreme Court was pending, the defendants paid $60,000 into court which was deposited into an interest bearing account. ***Id***. at 327. Later, the Supreme Court denied the application for permission to appeal and the trial court was called upon to determine the exact amount the defendants owed after the plaintiffs were paid the $60,000 plus $292.80 in interest that the money had earned while on deposit with the clerk. ***Id***. The court entered judgments holding that the defendants owed exactly $11,378.60 in post-judgment interest on the plaintiffs' unsatisfied judgments. ***Id***. The defendants appealed and the plaintiffs raised the issue of whether they were entitled to post-judgment interest from the date the judgments were entered until the date they were paid in full. ***Id***. at 328. This Court stated:

16

Plaintiffs' third issue presents the thorny question of their right to "interest on interest", that is, interest upon the unpaid interest which accumulated on the judgment from the jury verdict until payment. As stated, the Trial Court rendered judgments for that interest on November 29, 1990, and those judgments are the subject of this appeal.

T.C.A. §§ 47–14–121 and 122 mandate interest on judgments. There was a dispute as to the amount of interest which the Trial Court resolved by judgment. Upon the rendition of that judgement plaintiffs were entitled to their money and the defendants were under a duty to pay it and to pay the statutory interest charges from the date of entry of the judgment to the date of payment.

*Id*. at 330.

The only distinction Rand offers is that there were "separate" judgments in *Mattingly* for interest. We cannot see how that makes *Mattingly* different from the present case. The important fact is that the January 2011 judgment in the present case determines the exact amount of all interest owed to Automation as of the date of that judgment. Through no fault of the trial court, that judgment is being modified by this opinion so that the amount will be somewhat less. Nevertheless, it is a judgment holding Rand liable for interest accrued as of that date. We follow *Mattingly* and hold that Automation is entitled to recover post-judgment interest at the statutory rate on the unpaid balance of the January judgment as modified by this opinion. We cannot render an exact figure because we are not sure of the exact amount of Rand's earlier payment or when its next payment will be made.

D.

We conclude with the issue of whether the trial court erred in denying Automation an award of discretionary costs. This puts us in the position of considering whether the trial court abused its discretion when, in considering Automation's request, it relied, in part, on its inability to grant Rand relief from the miscalculated prejudgment interest. It is a strange position because we have now held that the trial court was correct in not modifying the prejudgment interest on remand, but we have, on our own order, removed the erroneous prejudgment interest from the judgment. The result of this modification is that the trial court, through no fault of its own, considered the equities of discretionary costs, including a factor that is no longer in the case; *i.e.*, a windfall of $92,318.59 excess interest to a party who was asking for $19,571.85 in discretionary costs. The trial court denied Automation any recovery

17

of discretionary costs for "equitable reasons, including" the erroneous and excessive prejudgment interest. Automation argues that its discretionary costs should have been allowed because Rand did not even challenge the necessity and reasonableness of most of the charges. We reject this argument because we read Rand's papers filed in opposition to the motion to argue that the particulars of the case justify denying any recover whatsoever and, alternatively, if some are awarded, some should also be denied.

Rand argues that the trial court should be affirmed because the court spoke in plural terms of "reasons" and there are numerous equitable reasons, according to Rand, for denying discretionary costs. The problem with this approach is that we are unable to discern whether the trial court would have awarded some or all of the discretionary costs claimed by Automation, had it not been troubled by the prejudgment interest windfall. We think the best course in this situation is to vacate the order denying discretionary costs and remand the case to the trial court for consideration anew of Automation's motion for discretionary costs. This approach will allow the court to articulate whether it has serious equitable concerns – other than the former but now corrected miscalculation of prejudgment interest – that justify denying Automation an award of all or part of its claimed discretionary costs. If the court decides to award some or all of the costs claimed, it will have the opportunity to make "individualized determinations regarding the reasonableness and necessity" of the claimed expenses. *Stalsworth v. Grummons*, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000).

V.

The judgment of the trial court is modified in part, vacated in part and affirmed in part. Even though the trial court was without authority to depart from our reinstatement of the monetary award to Automation, along with the prejudgment interest, pursuant to Tenn. R. App. P. 36(a) we order that Rand is entitled to have the award of prejudgment interest reduced by $92,318.59. The January 2011 judgment is modified to reflect a principal amount due of $2,250,427.41, including the corrected figure for prejudgment interest. That part of the January judgment holding that post-judgment interest is to be calculated from the date of entry of the August 2008 judgment is affirmed, but modified to reflect accrued interest of $543,805.92 as of January 28, 2011. That part of the judgment denying Automation an award of discretionary costs is vacated and the trial court is directed to consider the motion anew. On remand, Automation shall be entitled to collect interest from January 28, 2011 until the date of payment on any part of the judgment, as modified, that remains unpaid. Costs on appeal are taxed equally to the appellant, Tennessee Rand, Inc, and the appellee, Automation Industrial Group, LLC. This case is remanded, pursuant to applicable law, for a hearing on Automation's motion for discretionary costs and for enforcement of the judgment as changed by us.

18

_____
CHARLES D. SUSANO, JR., JUDGE